408 So.2d 846 (1982)
STATE of Florida, Appellant,
v.
Charles Lewis BROWN, Appellee.
No. 81-962.
District Court of Appeal of Florida, Second District.
January 22, 1982.
Jim Smith, Atty. Gen., Tallahassee, and David T. Weisbrod, Asst. Atty. Gen., Tampa, for appellant.
Christopher F. Wells of Harris, Barrett & Dew, St. Petersburg, for appellee.
SCHEB, Chief Judge.
On this appeal we must determine the validity of a cotenant's consent to a warrantless search of the defendant's apartment.
The state charged Charles Lewis Brown with cultivation of marijuana in violation of section 893.13(1)(a)2., Florida Statutes (1979). Brown pled not guilty. Prior to trial he moved to suppress the contraband seized from the apartment which he occupied jointly with his cotenant, William Bailey. The trial court granted the motion, and the state filed this appeal. We have *847 jurisdiction pursuant to Florida Rule of Appellate Procedure 9.140(c)(1)(B).
While the trial judge did not state the basis of his ruling, the defendant suggests that the court ruled in his favor because it refused to consider hearsay evidence introduced by the state on the issue of whether his cotenant validly consented to a search of the apartment. The state, in urging a reversal of the judge's order, posits that the court erroneously ruled for the defendant because the court found the evidence on the issue of consent to be insufficient.
Officer J. Cornish was the only witness who testified at the suppression hearing. The relevant facts as developed from his testimony are as follows: On September 3, 1980, Officer Cornish and Detective W. McCann of the St. Petersburg Beach Police Department responded to an anonymous telephone tip that marijuana plants were being grown on a porch at 7950 Blind Pass Road, Apartment 4. They proceeded to drive to that address in an unmarked car. Once there, Cornish exited the car and walked past the ground floor apartment 4 on the sidewalk running between the apartment building and the apartment parking lot. There, from a distance of approximately four to five feet, he observed two plants in a white plastic bucket on the apartment's screen porch. Based upon his police training and field experience, Cornish recognized the plants to be marijuana.
Cornish returned to the car, and the officers drove around the block and parked in the apartment parking lot. Both officers exited the car. Intending to go to apartment 4, they observed a white male leaving the building which housed that apartment. As the man proceeded to enter a vehicle, the officers approached him. They identified themselves as police officers and the man identified himself as William Bailey.
The officers asked Bailey if he lived in apartment 4, and he replied that he did. They requested permission to go into the apartment to speak to him "about a matter," without indicating that the matter they wished to discuss concerned the marijuana plants. Bailey walked back to apartment 4, unlocked the door, and entered with them. The defendant was working at this time in a local restaurant. Upon entry, the officers read Bailey his Miranda rights, and Bailey acknowledged that he understood them. Cornish then inquired as to the location of the marijuana plants that he had seen. Bailey stated that they were in one of the two bedrooms. With Bailey's permission, Cornish walked to the edge of the living room and from there looked into the bedroom. From his position Cornish observed in plain view the two marijuana plants in the white plastic buckets. Cornish seized the plants and came back and asked Bailey if he would consent to a search of the entire apartment. Bailey, at first reluctant, asked if he had a choice. Cornish replied that he did have a choice. Bailey then consented and the officers conducted a search which resulted in the seizure of a small bag of marijuana, a pipe containing marijuana, several roaches, and several marijuana seeds. According to Cornish, Bailey told him that one plant belonged to the defendant and the other to him. Bailey was arrested immediately, and the defendant was arrested subsequently at the restaurant where he worked.
At the outset, we reject the state's argument that the defendant lacks standing to challenge the validity of the warrantless search. One who resides in an apartment that he rents or owns has a legitimate expectation of privacy there. See Katz v. United States, 389 U.S. 347, 351, n. 8, 88 S.Ct. 507, 511, n. 8, 19 L.Ed.2d 576 (1967). See also State v. Morsman, 394 So.2d 408, 409 (Fla. 1981), cert. den. 452 U.S. 930, 101 S.Ct. 3066, 69 L.Ed.2d 431 (1981).
Having concluded that defendant Brown has standing to challenge the instant search, we first consider whether the court could receive over the defendant's objection hearsay evidence regarding the issue of the third-party consent. In United States v. Matlock, 415 U.S. 164, 172-75, 94 S.Ct. 988, 993-95, 39 L.Ed.2d 242 (1974), the Supreme Court, noting that the exclusionary rules of evidence, aside from the rules of privilege, are not normally applicable at suppression *848 hearings, held that hearsay evidence may be admitted at suppression hearings on the issue of third-party consent. The defendant, however, asserts that the hearsay evidence should not have been admitted here since he contends that the facts in the instant case differ materially from those in Matlock. Specifically, he points out that in Matlock the third party who consented to a warrantless search was available for cross-examination at the suppression hearing, whereas here, Bailey was not.
This difference is of no moment. Bailey's credibility was corroborated by several factors. First, he admitted that he owned one of the plants. This was a statement against penal interest and admissions against interest need not be excluded as hearsay. Baker v. State, 336 So.2d 364, 367 (Fla. 1976). Next, the defendant, upon his arrest, confessed that he owned one of the marijuana plants and stated that Bailey owned the other. This is exactly what Cornish testified that Bailey had previously told the officers. Since Cornish testified in detail as to what Bailey stated and was cross-examined, it would be inappropriate to assume that he committed perjury in relating his conversation with Bailey. McCray v. Illinois, 386 U.S. 300, 313, 87 S.Ct. 1056, 1063, 18 L.Ed.2d 62 (1967). We therefore hold that it was proper for the trial court to receive hearsay evidence on the matter of the third-party consent, and such evidence should have been considered by the court.
Finally, we must decide whether the evidence at the suppression hearing demonstrated that Bailey's consent was sufficient to allow a search of the apartment. Bailey's consent was valid if it was freely and voluntarily given and if Bailey had authority to permit the officers to search in the areas where they seized the contraband.
A warrantless search of property by state authorities is valid where consent is voluntarily and freely given. Schneckloth v. Bustamonte, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045, 36 L.Ed.2d 854 (1973). Whether consent was freely and voluntarily given is determined from the totality of the circumstances. Id. at 227, 93 S.Ct. at 2047. An individual need not have knowledge of his right to refuse consent. Id. However, where the state relies on consent to uphold the legality of the warrantless search, it has the burden of establishing that this consent was freely and voluntarily given. Bumper v. North Carolina, 391 U.S. 543, 548, 88 S.Ct. 1788, 1791, 20 L.Ed.2d 797 (1968). To sustain its burden, the state must prove voluntary consent by clear and convincing evidence. Norman v. State, 379 So.2d 643, 646 (Fla. 1980).
Voluntariness aside, where two people have common authority to use, occupy or possess effects or premises, either may consent to a search. Matlock, 415 U.S. at 169-71, 98 S.Ct. at 992-93; Silva v. State, 344 So.2d 559, 562 (Fla. 1977); United States v. Jones, 580 F.2d 785, 787 (5th Cir.1978); Lawton v. State, 320 So.2d 463, 464 (Fla. 2d DCA 1975); Padron v. State, 328 So.2d 216, 217 (Fla. 4th DCA 1976); Lewis v. State, 296 So.2d 575, 577 (Fla. 1st DCA 1974).
A careful review of the evidence indicates to us that Bailey had the requisite authority to consent and that the state proved by clear and convincing evidence that his consent was freely and voluntarily given. Bailey's consent to allow the officers to enter the apartment was voluntary. The officers were straightforward in their approach. They did not gain entry by either subterfuge or coercion. They identified themselves in the parking lot and peacefully requested and were granted permission to enter the apartment. Bailey, as a cotenant, had authority to allow the officers to enter the apartment. Once inside the apartment, Bailey freely granted Cornish permission to venture into the living room. Bailey, as a cotenant, had authority to permit Cornish to traverse the living room as this is a common area. The seizure of the marijuana plants from the defendant's bedroom occurred after Cornish sighted them from his position in the living room. The seizure of the plants was thus justified under the plain view doctrine. See Hall v. State, 395 So.2d 1258 (Fla. 2d DCA 1981). Hence, the plants are admissible *849 into evidence. Moreover, the pipe containing marijuana which was seized from a living room table pursuant to Bailey's voluntary consent is also admissible into evidence since Bailey, as a cotenant, had authority to permit a search of the living room. Matlock; Silva; Jones; Lawton; Padron; Lewis.
We agree with the trial judge's decision to suppress the several roaches, several marijuana seeds, and small bag containing marijuana which were seized from the defendant's bedroom.
Accordingly, we reverse that portion of the order suppressing the marijuana plants and pipe containing marijuana, and affirm that portion suppressing the roaches, marijuana seeds, and bag containing marijuana. We remand for further proceedings consistent with this opinion.
GRIMES and CAMPBELL, JJ., concur.