426 So.2d 986 (1983)
David Alan MYERS, Appellant,
v.
STATE of Florida, Appellee.
No. AH-58.
District Court of Appeal of Florida, First District.
January 5, 1983.
Rehearing Denied March 1, 1983.
*987 Glenna Joyce Reeves, Asst. Public Defender, Tallahassee, for appellant.
Barbara Ann Butler, Asst. Atty. Gen., Jacksonville, for appellee.
JOANOS, Judge.
In this appeal from a judgment and sentence for possession of methaqualone, appellant asserts that the trial court erred in denying his motion to suppress evidence obtained from within his apartment. Appellant pled nolo contendere reserving the right to appeal the denial of his motion to suppress. Appellant also challenges the conditions of his probation.
Appellant occupied a townhouse apartment with Cynthia Sheffield. On June 21, 1981, a black Oldsmobile struck a parked, unoccupied vehicle causing some property damage, and did not stop. Officers Green and Shoenfield were called to investigate the accident and after about an hour they were informed that the owners of the parked automobile which had been hit had located the black Oldsmobile parked near an apartment complex. It was determined that the car belonged to Sheffield Industries. The officers began knocking on doors at the apartment complex in order to find the operator of the vehicle.
Officer Green testified that Ms. Sheffield, dressed in a bikini, answered the door of Apartment 73 and acknowledged ownership of the auto, but said she did not think enough damage had been done to warrant stopping. Green testified Sheffield said "Why don't you come in," and that he told Sheffield "she had to go with me to the police station to complete the accident report" and that he was going to place her under arrest. Green said he wanted to go to the station to do the report because Sheffield seemed intoxicated and in bad shape and he did not want to stay at her apartment. Green said she agreed to go, but wanted to go upstairs and put on a shirt and tell her boyfriend, and that she invited him upstairs after he told her he did not want her to go upstairs alone. Both Officers followed her upstairs and into the bedroom where appellant was sleeping and where they observed scales, a transparent bag of white powder, and a partially opened wooden box containing a transparent bag of marijuana, the evidence sought to be suppressed. Green also said he had observed another woman in the kitchen downstairs, and a pistol in the living room, and followed Sheffield upstairs for his own protection, although he was not concerned that there was someone downstairs.
Officer Shoenfield testified in a deposition, parts of which were introduced at the *988 suppression hearing, that once the two officers were inside the apartment, Officer Green told Sheffield that she needed to come to the police station, Sheffield said she wanted to go upstairs and put on a shirt, and Green said "fine" and instructed Shoenfield to follow her upstairs.
After hearing the evidence presented at the suppression hearing, the trial judge ruled that the officers had entered the apartment on Sheffield's invitation and with her consent, that she gave consent for the officers to accompany her upstairs; that it was their duty to accompany her upstairs and that the illegal substance had been observed in plain view.
Appellant contends that the state failed to prove by clear and convincing evidence that Sheffield freely and voluntarily consented to the officers' initial entry into the apartment, and that their warrantless entry into the apartment to effect her arrest was illegal under Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), as well as Florida case law providing that a police officer is not authorized to enter a building to make a warrantless arrest for a misdemeanor, citing Johnson v. State, 395 So.2d 594 (Fla. 2d DCA 1981).[1] Appellant asserts that the state did not show by clear and convincing evidence that Sheffield gave consent in the face of evidence that Sheffield was intoxicated at the time and unaware of her right to refuse the officers' entry and that the officers failed to advise Sheffield of their purpose to arrest her before entering.
Alternatively appellant contends that even if Sheffield consented to the initial entry into the apartment, the seizure of evidence from the bedroom was illegal because Sheffield was illegally arrested while downstairs in the apartment, thus any consent for the officers to accompany her upstairs was presumptively tainted. Briefly, appellant's theory is that Officer Green was without authority to arrest Sheffield because the offense which she had committed was a noncriminal traffic infraction. Appellant points out that an officer's authority to arrest without a warrant is limited to that authorized by statute, and that only Section 316.645 arguably provides such authorization in this case. Also, Section 316.645 has been interpreted in light of Chapter 318 as not providing authority to make an arrest for a noncriminal traffic infraction. State v. Young, 45 Fla. Supp. 126 (Fla. 4th Cir.Ct. 1977).
Section 316.645 provides:
A police officer who makes an investigation at the scene of a traffic accident may arrest any driver of a vehicle involved in the accident when, based upon personal investigation, the officer has reasonable and probable grounds to believe that the person has committed any offense under the provisions of this chapter in connection with the accident.
The offense which Sheffield allegedly committed is defined in Section 316.063, which requires one who collides with and damages an unattended vehicle to immediately stop and locate and notify the owner or attach a note to the vehicle. Failure to do so is to be punished as provided in Section 316.655, which clearly identifies the offense as an infraction as defined in Section 318.13(3). An infraction is "a noncriminal violation which is not punishable by incarceration and for which there is no right to a trial by jury or a right to court appointed counsel." Appellant argues that when Section 316.645 and Chapter 318 are construed in pari materia, the term "offense" in 316.645 must be limited to the criminal offenses listed in Sections 316.655(4) and 318.17, and since Sheffield's arrest was for a noncriminal infraction, not a criminal offense, it cannot be justified under Section 316.645 or any other statutory provision, therefore any arrest of Sheffield was illegal and any subsequent consent to accompany her upstairs was invalid.
First of all, although appellant asserts the initial consent to the officers' entry *989 into the apartment was invalid because the officers did not explain their purpose in being there to Sheffield, there was evidence from which the trial court could conclude that the officers did not enter the apartment under false pretenses, and that Sheffield invited the officers or consented to their entry into the apartment. The testimony can also be interpreted as showing that at the point when the invitation to enter issued, Green had not definitely ascertained that Sheffield had been personally involved in the accident. Even if the invitation came after Green had determined she had been involved in the accident, it does not appear that he misrepresented his intentions in order to gain entry into the apartment, and it does not appear that Sheffield's invitation or consent for the officers to enter was in response to any misrepresentation. To the extent that Green had had time to explain his purpose before he was invited inside, Sheffield was apprised of his reason for being there. These circumstances distinguish the instant case from the cases relied on by appellant, State v. Bailey, 417 A.2d 915 (R.I. 1980), and McCall v. People, 623 P.2d 397 (Colo. 1981).
The next question presented is whether an arrest occurred once the officers were inside the apartment. The elements of an arrest are: (1) the purpose or intention to effect an arrest under a real or pretending authority; (2) an actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) a communication by the arresting officer to the person whose arrest is sought, of an intention, a purpose then and there to effect an arrest; and (4) an understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain. Melton v. State, 75 So.2d 291 (Fla. 1954). Appellant argues that all of these criteria were satisfied and that clearly Sheffield's freedom of movement was significantly restrained. Appellee argues that Sheffield was not arrested, rather she merely consented to accompany the officers to police headquarters in order to fill out the accident forms and accept a traffic citation.
In order to establish that an arrest occurred, appellant points to Officer Green's testimony that in proceeding to the apartment, it was his purpose to arrest the operator of the vehicle and take him or her to the police station, and that this intention was communicated to Sheffield since Green informed her "she had to go with me to the police station to complete the accident report," and he "was going to place her under arrest to take her to the station and write her some tickets." Regarding Green's intention to arrest Sheffield, at the suppression hearing, Green clarified what he meant by an arrest: "[W]hen you write a traffic citation, it's the same thing as arresting them. You just release them on their own signature... . I was not going to physically place them in jail, but I was going to take them down to finish the report there."
Even assuming that Green's intention to "arrest" as qualified above, was communicated to Sheffield, and that a constructive detention could be inferred from the circumstances, this would establish only the first three elements of an arrest. As to the fourth, Sheffield responded negatively when asked whether she recalled Officer Green telling her he wanted her to go down to the police station, but she testified that her common sense told her that it would be normal to go down to the police station to take care of an accident. She also replied negatively when asked whether she was aware, as she went upstairs, that she was under arrest. "There can be no arrest ... where the person sought to be arrested is not conscious of any restraint." 5 Am.Jur.2d "Arrest" § 1. Sheffield's perception of the situation seems particularly significant in this context because whether she was actually under arrest and aware that she was under arrest in theory affects the quality of her subsequent alleged consent/invitation for the officers to accompany her upstairs. We also note that repeatedly in his testimony Officer Green said he intended to take Sheffield to the station for the limited purpose of completing an *990 accident report and issuing a traffic citation, and that he did not wish to remain in Sheffield's apartment to carry out these functions due to her condition. Green also testified that if Sheffield had refused to accompany him he would not have restrained her, but would have left in order to obtain an arrest warrant. Given all of these factors, we do not consider Green's decision to complete the reports and citations at the police station to have been unreasonable, and we do not think a formal arrest occurred which, if invalid, might have tainted Sheffield's subsequent consent for the officers to accompany her upstairs.
Appellant also contends that even absent an illegal arrest, Sheffield's alleged consent for the officers to accompany her upstairs was merely submission to the apparent authority of the officers, because prior to inviting them upstairs, Green told Sheffield that "she had to go with me to the police station to complete the accident report, I was going to issue some traffic citations," and that he "was going to place her under arrest to take her to the station and write her some tickets." Appellant cites as authority Bailey v. State, 319 So.2d 22 (Fla. 1975); Villari v. State, 372 So.2d 522 (Fla. 1st DCA 1979); Seuss v. State, 370 So.2d 1203 (Fla. 1st DCA 1979); Ingram v. State, 364 So.2d 821 (Fla. 4th DCA 1978); Gonterman v. State, 358 So.2d 595 (Fla. 1st DCA 1978); and Mobley v. State, 335 So.2d 880 (Fla. 4th DCA 1976). In particular, appellant relies on the following language from Mobley, citing Pekar v. United States, 315 F.2d 319 (5th Cir.1963):
[I]f this consent is obtained by the use of force or pressure, or where superior authority had any place in the obtaining of consent, the consent is no consent at all, and the constitutional guarantees against unreasonable search and seizures has been violated.
The question whether the consent was voluntary "`is a question of fact to be determined from the totality of all the circumstances.'" Denehy v. State, 400 So.2d 1216 (Fla. 1980). Viewing the totality of the circumstances, and particularly Sheffield's testimony and other explanatory testimony by Officer Green, we conclude that the trial court could rule that Sheffield's consent was not the result of pressure or coercion. First, as noted above, Sheffield testified that she was not aware of being under arrest and that she considered it normal to go to the station in order to fill out accident reports. Second, Officer Green, in testifying at the suppression hearing that it had been his intention to arrest her, a factor heavily relied upon by appellant, clarified what he meant by an intention to arrest as noted above. He repeatedly stated that he intended to take her to the station for the limited purpose of filling out reports and issuing a traffic citation, and this limited purpose was conveyed to Sheffield before the alleged consent/invitation to the officers to accompany her upstairs, with her reaction that this procedure was not unusual. Therefore we think this case is distinguishable from the cases listed above. Notably, in each of those cases, there was affirmative evidence of lack of consent, either in the form of the defendant questioning the officer regarding the need to obtain a search warrant, or in the form of refusing several times to allow a search and finally allowing it after being told the officers could obtain authority to search regardless of consent, or the defendant silently complied with an unauthorized request by an officer. Again, it does not appear that Officer Green deceived Sheffield as to his intention to go to the station for the limited purpose of filling out an accident report and issuing a citation prior to the invitation to accompany her upstairs.
In addition to the foregoing, we note that the officer investigating a traffic accident has a duty to expeditiously complete and file written accident reports in many cases, Section 316.066(3)(a) Florida Statutes. Construing Section 316.645 in light of chapter 318, an officer may not have authority to formally arrest an individual in the fullest sense and hold them for interrogation or until bail is authorized. Certainly, however, there is authority to temporarily detain for the purpose of filling out accident reports and issuing citations. This authority *991 also includes the ability to proceed to a neutral place, when to do so is reasonable and necessary, in order to accomplish this end, when the person involved has already left the accident scene. Such a temporary detention, properly limited in scope by the circumstances which prompted its initiation, would not appear to run afoul of the individual right to remain free of unreasonable searches and seizures. See generally Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The circumstances of this case are unusual; however, it was not unreasonable for the officer pursuant to his duty to complete reports and issue citations, to ask that Sheffield go with him to the police station or to accompany Sheffield upstairs for his own protection.
With regard to appellant's challenge to the conditions of his probation, the record indicates that the alleged illegally imposed conditions have not been brought to the attention of the trial court, for an initial ruling, by way of an objection or a motion to strike the alleged offending conditions. Therefore, we affirm without prejudice to appellant to raise this argument in a properly filed motion to strike or correct the alleged illegal conditions of probation. See Fresneda v. State, 347 So.2d 1021 (Fla. 1977); Bodden v. State, 411 So.2d 1391 (Fla. 1st DCA 1982); and Section 948.03(3) Florida Statutes (1981). See also Barlow v. State, 390 So.2d 165 (Fla. 5th DCA 1980), and Pope v. State, 368 So.2d 676 (Fla.1st DCA 1979).
AFFIRMED.
THOMPSON, J., concurs.
LARRY G. SMITH, J., dissents with opinion.
LARRY G. SMITH, Judge, dissenting.
I dissent because I believe that in the absence of a lawful arrest, the officers had no authority to restrict Sheffield's movements in her own apartment by denying her the right to go upstairs to put on a shirt unless they also went upstairs with her. The circumstances are such that Sheffield was restrained of her liberty to the extent that she would have been entitled to invoke the protections of the Fourth Amendment. See, Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The officers' intrusion into appellant's second floor bedroom was neither reasonable nor necessary to accomplish their mission, if indeed, as the majority finds, it was simply to secure Sheffield's assistance in filling out accident reports, and to issue a traffic citation to her.[1]
It seems clear to me that Section 316.645, Florida Statutes, which Sheffield is alleged to have violated, does not give an officer arrest authority except at the accident scene. The text of the statute is quoted in the majority opinion. However, the majority has overlooked the section heading, which reads: "316.645. Arrest authority of officer at scene of a traffic accident." (emphasis supplied) This section heading was a part of the law as enacted by the Legislature[2] and is entitled to due weight in the construction of the statute. 30 Fla.Jur., Statutes, § 108.[3]
NOTES
[1] The state concedes that appellant had a legitimate expectation of privacy as a resident of the apartment, citing State v. Brown, 408 So.2d 846 (Fla. 2d DCA 1982), and additional cases. The standing issue was not specifically addressed below.
[1] Cf. Washington v. Chrisman, 455 U.S. 1, 102 S.Ct. 812, 70 L.Ed.2d 778 (1982), holding that police had the right, for purposes of monitoring the actions of an arrestee, to enter his dormitory room where arrestee had been followed to go to secure identification papers, without necessity of exigent circumstances.
[2] Originally enacted as Section 316.07, Chapter 71-135, Section One, Laws of Florida (1971).
[3] Section 316.645, when considered in connection with the section heading quoted above, discloses an intention to effect only a narrowly circumscribed expansion of warrantless arrest rights under Section 901.15, subsections (1) and (5), which provide, among other things, that an arrest may be made without a warrant for a misdemeanor or a violation of Chapter 316 committed in the presence of the officer, such arrest to be made either immediately or on fresh pursuit.