STATE of Iowa, Appellee,

v.

William D. BEEMAN, Appellant.

No. 65970.

Supreme Court of Iowa.

Feb. 17, 1982.

Douglas E. Johnston and David W. Newell, Muscatine, for appellant.

Thomas J. Miller, Atty. Gen., Shirley Ann Steffe, Asst. Atty. Gen., and Stephen J. Peterson, County Atty., for appellee.

Considered by REYNOLDSON, C. J., and HARRIS, ALLBEE, McGIVERIN and SCHULTZ, JJ.

McGIVERIN, Justice.

On April 26, 1980, the body of Michiel Winkel was found in Wild Cat Den State Park in Muscatine County. She had been kicked in the head and choked before the murderer inflicted a lethal injury by stabbing her seventeen times in the chest. The body was unclothed and the victim had engaged in sexual intercourse sometime shortly before or after her death. Defendant William D. Beeman was charged with first-degree murder in the slaying. §§ 707.1, .2, The Code 1979. He was found guilty as charged by a jury and sentenced. He appeals and we affirm.

The State's evidence showed the following. Defendant took Michiel to the park on the night of April 21, 1980. When she refused to have consensual sexual relations with him, he kicked her in the head. Later, he killed her by stabbing her repeatedly in the chest and concealed the corpse behind a log. Defendant then returned to the home of his girlfriend where he spent the night. Michiel's body was recovered five days later.

Beeman's appeal raises five issues. He contends trial court erred in:

1.  Instructing the jury during deliberations that three documents contained in the victim's purse were not to be considered in the case;

2.  Admitting testimony and an exhibit of a martial arts weapon belonging to defendant;

3.  Giving felony-murder instructions based on the underlying felonies of sexual abuse and willful injury;

4.  Overruling defendant's motion for new trial based on alleged suppression by the State of exculpatory evidence; and

5.  Failing to suppress defendant's inculpatory statements.

We find no merit in these contentions and therefore affirm defendant's conviction.

I.  *Instruction after jury deliberations began.* The court admitted into evidence, without objection, State's exhibit Z, the purse Michiel Winkel carried with her when last seen on the night of April 21. The contents of the purse were admitted with the purse. During the trial neither party used the contents of the purse to assist in proof of their theories of the case.[1]

In its discretion, trial court allowed several exhibits, including the purse, to be taken by the jury into the jury room during deliberations.[2] After one and one-half hours of deliberation the bailiff indicated to the court that the jury had asked whether or not it was to consider three items it had discovered in the purse. The three items were a paper from a collection agency, and a deposit slip and bankbook from the First National Bank in Muscatine. The two items from the bank indicated the victim had made a bank transaction on April 22, the date after the State alleged defendant murdered Winkel. The factual significance of this date was that defendant had a verified alibi for April 22 through 26, but less so

---

1.  Defendant did discuss several of the items contained in the purse during direct examination of Daryl Werner of the Muscatine County Sheriff's Department. The examination focused on the following items: a package of chewing tobacco; a plastic bag from a motel; several tampons; and a motel key from a motel in Minnesota. The purpose of the examination was to determine if the Sheriff's Department had investigated various leads in the case. The defense in the case, however, was alibi. Neither these items nor the questions concerning them related to that defense.

2.  Iowa R.Crim.P. 18(7)(e) provides in part: "Upon retiring for deliberations the jury may take with it all papers and exhibits which have been received in evidence, and the court's instructions." We find that rule 18(7)(e) provides for submission of exhibits to the jury in the discretion of trial court. See *State v. Blyth*, 226 N.W.2d 250, 272 (Iowa 1975); *State v. Shea*, 218 N.W.2d 610, 615 (Iowa 1974). See also ABA Standards Relating to Trial by Jury § 5.1 (1974).

for April 21.[3] Apparently neither counsel for the State nor the defendant had previously grasped the significance under the submitted record of the bank slip and book about which the jury was concerned. Neither side had relied on these items as a part of its case. The explanation for the dates on the deposit slip and bankbook, proffered in a deposition that was not before the jury, was that the transaction was made at a branch office of the bank at approximately 3:00 p. m. on April 21, and therefore postdated to April 22, the next banking day.

During an in-chambers hearing to resolve the matter, defendant took the position that the jury should be permitted to consider the banking records because the purse and its contents had been admitted without objection. The State contended that exhibit Z had not been offered to prove the assertions that may have been made by the contents of the purse. The State also moved to reopen the evidence to explain why the deposit slip was dated April 22 instead of April 21. Alternatively, the State moved for a mistrial. The court overruled the State's motions and resolved the dilemma by giving this additional instruction to the jury:

> In response to your inquiry about the bankbook entry and deposit slip found by you as part of the contents of the purse, you are instructed that they are not to be considered by you as evidence of any matter contained therein. The contents of these documents are written hearsay and are inadmissible into evidence without proper foundation about them. These papers are no part of the Prosecution or the Defense, and it is a mistake that they have come into your possession without foundational testimony about

them. The documents are returned to you herewith, but you are instructed to not consider the contents of these documents to prove or disprove any matter contained therein.

The jury resumed deliberations and reached a verdict of guilty three hours later.

■ Defendant contends the court erred in giving the above instruction to the jury.[4] We disagree.

In *State v. York*, 211 N.W.2d 314, 318 (Iowa 1973), we said:

> This court has recognized what appears to be the generally accepted rule that "courts have a considerable latitude in excluding offered evidence that is objectionable, even in the absence of any objection or if there is a proper ground which is not stated." This is also true of the court's power to strike evidence it deems erroneously admitted. *State v. Shimon*, 182 N.W.2d 113, 115 (Iowa 1970). Although a trial judge does have power, in the exercise of sound discretion, to exclude or withdraw incompetent evidence after its admission, even in the absence of a timely and proper objection by the opponent, it is not ordinarily the duty of the court on its own initiative to exclude such evidence or to interpose an objection to a question. There must first be good reason for the exclusion.

(Citations omitted). *See also State v. Thornburg*, 220 N.W.2d 579, 584, (Iowa 1974).

■ We find the court's making of a response to the jury's question was proper. *State v. Kittelson*, 164 N.W.2d 157, 165–66 (Iowa 1969). We also find that the effect of the instruction, to withdraw the evidence of the banking transaction from the jury,

---

**3.** The fact that these items were discovered by the jury during deliberations and not brought to its attention by counsel earlier in the trial underscores the consequences of failing to carefully examine and consider exhibits in preparation for and during trial.

**4.** Defendant did not object to the instruction before it was given to the jury. However, he has preserved error by objecting in a motion for a new trial. Iowa R.Crim.P. 18(7)(f) provides that the rules relating to the instruction of juries in civil cases apply to criminal cases. Iowa R.Civ.P. 196 provides that if a trial court revises or adds to the "final" instructions, objection can be made in a motion for new trial. See *State v. McKee*, 312 N.W.2d 907, 915 (Iowa 1981).

was proper under *York*.[5] The court responded to an objection by the State to the "found" evidence. During the in-chambers hearing on how to resolve the issue, the prosecutor objected that the bankbook and deposit slip were written hearsay. The court agreed and found the evidence to be highly prejudicial to the State. The court did not desire to reopen the evidentiary record in view of defendant's understandable opposition to doing so. Without passing on the merits of the prosecution's objection, we believe the court properly concluded in its discretion that there was good reason for the exclusion under the circumstances. *York*, 211 N.W.2d at 318. Defendant's first assignment of error is without merit.

II. *Admission of martial arts weapon evidence*. Defendant contends the court erred in admitting into evidence num chucks owned by defendant.[6] We find no error.

Defendant was questioned on May 7 and 8, 1980, in connection with the slaying of Winkel. During the May 8 questioning at the sheriff's office, John Jutte, an officer with the State Department of Criminal Investigation, and Daryl Werner, of the sheriff's department, began to suspect the defendant's role in the slaying. At this juncture, they read him his *Miranda* rights. Defendant signed a written waiver of the rights and continued answering the officers' questions. He made a statement, later reduced to writing and signed by defendant, that he had taken the victim to Wild Cat Den State Park, attempted to have sexual intercourse with her, and, when she refused, kicked her in the head with his steel-toed boots. He could not recall stabbing or sexually assaulting Winkel. Defendant was arrested after the officers contacted the county attorney. Officer Werner took possession of the num chucks and a knife, both of which defendant was carrying.

At trial, defendant made an oral motion in limine to prevent the State from introducing the num chucks into evidence, or, in the alternative, to prevent their introduction into evidence without a prior hearing to determine their relevancy. He claimed the prejudicial effect of the num chucks outweighed their probative value.

The court found that the num chucks were not relevant at that point in the trial and prohibited their introduction as an exhibit without a prior determination of relevancy.

Later in the trial, defendant testified in his own behalf. On cross-examination, the State began to delve into his familiarity with martial arts and its weaponry. After defendant's objection was overruled, defendant answered that he possessed the num chucks when interrogated on May 8. Trial court conducted a hearing at this point, finding the question about martial arts weapons "fully" and "totally" relevant.

The prosecutor then demonstrated to the jury how the num chucks could be used to choke a person. Defendant did not object to the demonstration. When the State finally introduced the num chucks into evidence, defendant objected on relevancy grounds.

Admission of evidence at trial is a matter of trial court discretion. *State v.*

---

5. The facts of this case are analogous to cases where a defendant has been prejudiced by the jury finding inculpatory evidence contained in properly admitted exhibits being considered in deliberation. See *Farese v. United States*, 428 F.2d 178, 179–82 (5th Cir. 1970) (jury discovery and consideration of $750 cash found in pocket of shirt properly admitted as exhibit held reversible error); *State v. Pawley*, 123 Ariz. 387, 390–93, 599 P.2d 840, 843–46 (Ct.App.1979) (reversible error to allow jury to open and read a letter which was folded and sealed when admitted into evidence); *People v. Hanson*, 83 Ill.App.3d 1108, 1111–12, 39 Ill.Dec. 210, 213–

214, 404 N.E.2d 801, 804–05 (1980) (reversible error for jury to consider currency found in pockets of properly admitted coat). See also *United States v. Vasquez*, 597 F.2d 192, 193–94 (9th Cir. 1979) (reversible error committed when trial judge's file containing some inadmissible evidence left in jury room for four hours of deliberation).

6. Num chucks are a martial arts weapon. Defendant's num chucks were comprised of two hardwood dowels, eleven inches long and an inch in diameter joined at the ends with a piece of rope.

*Miller,* 229 N.W.2d 762, 770 (Iowa 1975). "We reverse only when we find he has abused his discretion in balancing the probative force of the evidence against the danger of undue prejudice." *State v. Harmon,* 238 N.W.2d 139, 145 (Iowa 1976). "The test of relevancy is whether the evidence offered would render the desired inference more probable than it would be without such evidence." *State v. Mark,* 286 N.W.2d 396, 410 (Iowa 1979). The num chucks rendered more probable the inferences that defendant caused the choke marks on the victim's neck, that defendant was not intimidated during the custodial interrogation on May 8, and that he had knowledge of martial arts consistent with the ability to administer a devastating blow to Winkel's forehead. We find trial court did not abuse its discretion when it balanced probative value against undue prejudice in favor of admitting the num chucks into evidence. There is, therefore, no merit in this assignment.

III. *Propriety of felony-murder instructions.* Defendant contends the court erred in giving two instructions to the jury on the felony-murder doctrine based on the underlying felonies of sexual abuse and willful injury. We find no error.

Section 707.1, The Code, provides: "A person who kills another person with malice aforethought either express or implied commits murder." Section 707.2(2) provides: "A person commits murder in the first degree when he or she commits murder under any of the following circumstances: ... The person kills another person while participating in a forcible felony." "Forcible felony" is defined as "any felonious assault, murder, sexual abuse, kidnapping, robbery, arson in the first degree, or burglary in the first degree." § 702.11. Willful injury is a felonious assault, section 708.4, and thus, like sexual abuse, may serve as the underlying felony in a felony-murder instruction.

■ A. *Sexual abuse.* The victim's nude body was found on April 26, 1980, in a remote area of the state park. It had been concealed behind a log. An autopsy revealed the presence of seminal fluid in the

vagina. The State's evidence indicated that Beeman kicked Winkel in the head after she refused to consent to intercourse. The State theorized and claimed that the evidence would imply defendant then had intercourse with her before murdering her to conceal the assault and sexual abuse.

Trial court gave a three prong first-degree murder instruction to the jury. The first prong stated the elements of premeditated murder pursuant to section 707.2(1). The second prong was based on the felony of sexual abuse under section 707.2(2). The final prong was a felony-murder instruction based on willful injury.

Defendant contends the court erred in giving the felony-murder instruction based on sexual abuse because the State did not prove that Winkel had been sexually abused. Defendant failed, however, to object to the instruction at trial and error was not preserved.

Iowa R.Crim.P. 18(7)(f) provides that the rules relating to instruction of juries in civil cases also apply to criminal cases. Iowa R.Civ.P. 196 provides, in pertinent part:

Before jury arguments, the court shall give to each counsel a copy of its instructions in their final form, noting this fact of record and granting reasonable time for counsel to make objections, which shall be made and ruled on before arguments to the jury. Within such time, all objections to giving or failing to give any instruction must be made in writing or dictated into the record, out of the jury's presence, specifying the matter objected to and on what grounds. No other grounds or objections shall be asserted thereafter, or considered on appeal.

We have held that rule 196, "including its requirement of timely preservation of error as to instructions, shall be fully applicable to all criminal cases ...." *State v. Rouse,* 290 N.W.2d 911, 915 (Iowa 1980).

Because defendant did not object to the sexual abuse felony-murder instruction in compliance with Iowa R.Crim.P. 18(7)(f),

and Iowa R.Civ.P. 196, he waived any error in giving the instruction.[7]

B. *Willful Injury.* Defendant contends that the giving of the felony-murder instruction based on willful injury was improper. The basis for defendant's contention is that the principle of merger prevents the use of felonious assault as the felony underlying a felony-murder instruction.[8] We are not so persuaded.

■ By their terms, sections 707.2(2), 702.11 and 708.4, The Code 1979, make willful injury a proper underlying felony for a felony-murder instruction.

> The forcible felonies are listed in § 702.-11. These include felonious assault . . . . Some courts have held that the felony must be an independent felony, if malice is to be implied from it, and felonious assaults are not independent in this sense. However, an examination of §§ 708.3, 708.4, and 708.5, does not compel the conclusion that murders resulting from these assaults are not intended to be included in the first degree murder category. Prior law is altered somewhat by this section in that the felonies listed in former § 690.2 are not identical with those listed in the definition of "forcible felony."

> There is no offense called mayhem, § 708.4 including what was formerly that crime. . . . The result is that more murder will be first degree murder than was formerly the case.

4 J. Yeager and R. Carlson, *Iowa Practice, Criminal Law and Procedure* § 139 at 38–39 (1979).[9] Willful injury, then, encompasses mayhem, which was a basis for felony-murder under the pre-revised criminal code. *See* §§ 690.2, 693.1, The Code, 1975; 1 J. Roehrick, *The New Iowa Criminal Code: A Comparison* at 67 (1978); Dunahoo, *The New Iowa Criminal Code: Part II,* 29 Drake L.Rev. 491, 508 (1980).

The legislative inclusion of felonious assaults in the definition of forcible felony, and thus the definition of felony-murder, may be in response to our felony-murder discussion in *State v. Hinkle,* 229 N.W.2d 744 (Iowa 1975). In *Hinkle,* we discussed an annotation entitled "Application of Felony-Murder Doctrine where the Felony Relied Upon is an Includible Offense with the Homicide." *See* 40 A.L.R.3d 1341 (1971). We quoted a section of the annotation:

> Other jurisdictions confronted with a properly-presented "felony merger" issue have demonstrated a reluctance to allow the State to bootstrap a higher degree of

---

7. Defendant's contention that his motion for directed verdict at the close of the State's evidence preserves error is without merit. First, it does not satisfy Iowa R.Civ.P. 196. Second, it was raised for the first time on appeal in his reply brief thereby precluding our consideration of it. *Brown v. First National Bank of Mason City,* 193 N.W.2d 547, 551 (Iowa 1972); *Wolfswinkel v. Gesink,* 180 N.W.2d 452, 457 (Iowa 1970).

8. As in *State v. Hinkle,* 229 N.W.2d 744, 750 (Iowa 1975), "[w]e have serious doubt defendant presented this issue to trial court." When defendant objected to the instruction he did not use the term "merger." "The test for determining the sufficiency of an objection to an instruction in order to preserve error is whether the objection or exception taken alerted the trial court to the error which is now urged on appeal." *State v. Lewis,* 242 N.W.2d 711, 716 (Iowa 1976). However, trial court gave an example of how the merger doctrine would work such that we feel it was apprised of the essence of defendant's objection. We will address the merits of the issue since the *Lewis* standard has been met.

Cf. *State v. Pletka,* 310 N.W.2d 525, 528 (Iowa 1981) (error not preserved on challenge to felony-murder instructions).

9. We decline to adopt an independent felony rule for felony-murder based upon felonious assault. Were we to do so, however, there was sufficient evidence on the record to enable us to find trial court's felony-murder instruction proper. Defendant kicked Winkel with "a crushing blow to the anterior right side of the scalp down onto the face." The record contains evidence that she was then moved to another location, where defendant raped her and then administered the lethal wound, a series of lacerations to the chest area, one of which entered the victim's heart causing her death. Had she not been killed by the stabbing, Winkel would have been "seriously damaged" by the kick to the head. This kick to the head could be viewed as a felonious assault independent of the homicide and the stabbing assault which arguably "merged" into the homicide.

murder solely on the basis of felonious assault—thus inevitably reading out the element of malice aforethought or premeditation. *See* Annot., 40 A.L.R.2d 1341. Among courts considering the doctrine it has gained widespread acceptance.[10]

229 N.W.2d at 750. After *Hinkle*, the legislature included "felonious assault" in the felony-murder statute. *Compare* § 690.2, The Code, 1975, *with* §§ 707.2(2), 702.11, The Code, 1979.

■ Revised criminal code offenses are construed to alter prior law only if a legislative intent to change the prior law is clear. *Eggman v. Scurr*, 311 N.W.2d 77, 80 (Iowa 1981).

[A]ny material change in the language of the original act is presumed to indicate a change in legal rights. The legislature is presumed to know the prior construction of terms in the original act, and an amendment substituting a new term or phrase for one previously construed indicates that the judicial or executive construction of the former term or phrase did not correspond with the legislative intent and a different interpretation should be given the new term or phrase.

1A C. Sands, *Statutes and Statutory Construction* § 22.30 at 178 (1972). We conclude that the inclusion, by the legislature, of "felonious assault" in sections 707.2(2) and 702.11, indicates that it intended that felonious assaults, including willful injury under section 708.4, be felonies that may serve as the basis of a felony-murder and that the merger doctrine discussed in *Hinkle* not apply to such assaults.

■ There was evidence of willful injury. The court properly submitted the willful injury-murder instruction to the jury. *State v. Fuhrmann*, 261 N.W.2d 475, 479 (Iowa 1978). We find no merit in defendant's third assignment of error.

■ IV. *Suppression of exculpatory evidence.* Defendant contends he suffered a deprivation of due process, under U.S. Const. amend. 14, by the State's failure to disclose allegedly exculpatory evidence. Accordingly, he says his motion for new trial, based on that ground, should have been granted. *State v. Gilroy*, 313 N.W.2d 513, 521–22 (Iowa 1981). Upon our examination of the totality of the circumstances, we do not agree. *State v. Hall*, 249 N.W.2d 843, 845 (Iowa), *cert. denied*, 434 U.S. 822, 98 S.Ct. 66, 54 L.Ed.2d 79 (1977).

The exculpatory evidence at issue was the identity of Leslie Albert Brown, one of a group of up to eleven suspects in the slaying before defendant made inculpatory statements and was arrested on May 8. Defendant did not learn of Brown's identity until after trial. Brown, age 43, like defendant, age 23, resembled a composite sketch of a man seen with Winkel shortly before her death. Brown had been interviewed by the DCI on April 28. A report of the interview had been prepared.

Defendant filed a motion to produce pursuant to Iowa R.Crim.P. 13 on July 9, 1980. Paragraph two of that motion requested: "Copies of any and all reports or other documents containing information or facts which may be favorable to or exculpatory of defendant."

Issues of suppression of exculpatory evidence are governed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87, 83 S.Ct. at 1196–97, 10 L.Ed.2d at 218.

---

**10.** Seven states have adopted and six have rejected the merger doctrine where there is no independent felony. See *Comment*, 13 Wake Forest L.Rev. 369, 381 n. 55 (1977).

"Unlike the common-law felony-murder rule, and statutes in most other jurisdictions, § 690.2 [predecessor of section 707.2(2) ] does

not make all *killings* in perpetration of the designated felonies murder. It makes *murder* in perpetration of such felonies first-degree murder." *State v. Conner*, 241 N.W.2d 447, 463 (Iowa 1976). See also *State v. Brant*, 295 N.W.2d 434, 436 (Iowa 1980); *State v. Galloway*, 275 N.W.2d 736, 738 (Iowa 1979).

In *Agurs*, the Supreme Court set out different standards of materiality based upon the type of evidence used by the prosecution or the type of request made by the defendant. *Agurs* applied the *Brady* rule to three situations: 1) where the undisclosed evidence demonstrates that the prosecution's case includes perjured testimony and that the prosecution knew, or should have known, of the perjury; 2) where there has been a pretrial request for specific evidence; and 3) where there has been a general request for exculpatory evidence.[11] 427 U.S. at 103–07, 96 S.Ct. at 2397–99, 49 L.Ed.2d at 349–52. *See also State v. Love*, 302 N.W.2d 115, 123 (Iowa 1981). Beeman's request to produce was of the third *Agurs* category.

The standard of materiality where a general request for exculpatory evidence has been made is:

> if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt.

427 U.S. at 112–13, 96 S.Ct. at 2402, 49 L.Ed.2d at 355. *See also Love*, 302 N.W.2d at 123; *State v. Sheets*, 291 N.W.2d 35, 38 (Iowa 1980); *Armento v. Baughman*, 290 N.W.2d 11, 16 (Iowa 1980).

The evidence that was not disclosed in the present case, when evaluated in context of the entire record, does not raise a reasonable doubt of defendant's guilt. In the report of the April 28 investigation interview, there is a general physical description of Brown. In some particulars it matches a description given by Linda Ray, an employee of the motel where Winkel often swam and was last seen alive, of a man who picked up the victim in his automobile. Brown also told the DCI that he spoke with Winkel approximately two weeks before the interview at the motel pool. When Brown testified at the hearing on the motion for a new trial he first stated he thought he saw Winkel on April 22, but later said he was probably mistaken and that he really saw her on April 17. His testimony also would be cumulative of the trial testimony of Darlene Sandven. She was a classmate of Winkel and testified that she saw the victim shortly after noon on April 22 in the Muscatine Mall. Her testimony revealed the following facts: Sandven did not speak to Winkel or make eye contact with her; Sandven and Winkel passed each other at a considerable distance; Sandven had seen Winkel only once in the three years since high school; and Winkel did not acknowledge Sandven's presence at the Mall. Brown's evidence does not create a reasonable doubt of defendant's guilt. It does not meet the materiality standard set down in *Agurs*. There is no merit in this assignment.

■ V. *Failure to suppress inculpatory statement.* Defendant argues that the court erred by failing to suppress his confession. We find no error.

Defendant's statement was given to DCI Officer John Jutte, and Muscatine County Sheriff's Officer Daryl Werner. In the statement, he admitted taking Winkel to Wild Cat Den State Park, and kicking her in the head after she refused consensual sexual intercourse. The written statement and testimony concerning prior oral statements were admitted into evidence at trial.

Defendant made a motion to suppress the statement on September 12, 1980. Trial court overruled the motion on September 30, on the merits and because it was untimely. We find no error. This issue is controlled by *State v. McCowen*, 297 N.W.2d 226 (Iowa 1980). In *McCowen*, we found that Iowa R.Crim.P. 10(4) (1979) es-

---

11. For a discussion on specificity of requests to produce, see *Scurr v. Niccum*, 620 F.2d 186, 190 (8th Cir. 1980).

tablished the time limits for all motions to suppress except those to suppress evidence obtained via an unlawful search and seizure.[12] *Id.* at 227–28.

At the time involved here, rule 10(4) provided: "Motions hereunder, except a motion for a bill of particulars, shall be filed within thirty days after arraignment or prior to the impaneling of the trial jury, whichever event occurs earlier, unless the period for filing is extended by the court for good cause shown." *See* Iowa R.Crim.P. 10(4) (1979). This case is not affected by the July 1, 1980, amendment to that provision.

*Id.* at 227.

In the present case, defendant was arraigned on May 23, 1980. Trial court extended the deadline for all pre-trial motions to July 9, 1980. Defendant's motion to suppress on September 12 was untimely. The late filing was unexcused and the motion was therefore waived. *Id.* at 228; *State v. Graham,* 291 N.W.2d 345, 347 (Iowa 1980). Trial court did not err in refusing to suppress defendant's confession.

We have considered all of the defendant's contentions, whether or not expressly discussed herein, and find them without merit. Therefore, his conviction is affirmed.

AFFIRMED.

---

12. The present case is also governed by pre-revised Iowa R.Crim.P. 10(4). Rule 10(4) currently provides: "Motions hereunder, except a motion for a bill of particulars, shall be filed within forty days after arraignment, unless the period for filing is extended by the court for good cause shown." Iowa R.Crim.P. 11(1)(e) now also imposes the forty day limit on motions to suppress based on unlawful search and seizure.

Defendant contended in his reply brief that he should be allowed to file his motion to suppress any time before trial pursuant to *State v. Hansen,* 286 N.W.2d 163, 165 (Iowa 1979). We answered that contention in the negative in *McCowen,* 297 N.W.2d at 228.