**STATE of Iowa, Appellee,**

v.

**Paul A. ANDERSON, Appellant.**

**No. 91–1826.**

Supreme Court of Iowa.

May 25, 1994.

Rehearing Denied June 17, 1994.

James L. Ottesen, Davenport, and Kent A. Simmons, for appellant.

Bonnie J. Campbell, Atty. Gen., Richard J. Bennett, Asst. Atty. Gen., William E. Davis, County Atty., and Joseph Grubisich, Asst. County Atty., for appellee.

Considered by CARTER, P.J., and NEUMAN, SNELL, ANDREASEN, and TERNUS, JJ.

CARTER, Justice.

Paul A. Anderson was convicted by a jury of murder in the first degree in connection with the shooting death of Joseph Brown on March 5, 1988. The court of appeals reversed that conviction on the ground that the evidence was insufficient to support the jury's finding of guilt. We granted further review of the court of appeals decision.

After reviewing the record and considering the arguments of the parties, we disagree with the court of appeals' conclusion that a rational jury could not have found from the evidence, beyond a reasonable doubt, that defendant was the perpetrator of Brown's murder. In addition, we have considered the defendant's other assignments of error relating to admission of evidence and pretrial and trial procedures and find no basis for reversing his conviction as a result of those claims. Consequently, we vacate the decision of the court of appeals and affirm the judgment of the district court.

At approximately 5:50 p.m. on March 5, 1988, a passerby discovered Joseph Brown's body in a wooded ravine in Devil's Glen Park in Bettendorf. This person had been in the park for some time before discovering the body. She had heard no gunfire and had not observed any unusual activity. Joseph Brown had been shot twice in the head, and he died later that day without regaining consciousness. An acquaintance of the victim testified that he had spoken with him on the telephone about 4 p.m. on the day the body was discovered. This witness indicated that Brown was at his Moline, Illinois, apartment at the time of this conversation and told the caller that he was about to leave to meet someone. After determining that the victim lived in Moline, Illinois, authorities attempted to contact his wife at their apartment in that city. This led to the discovery of Brown's wife's dead body in the couple's apartment. The circumstances indicated foul play.

Authorities learned that the victim and the defendant, Paul Anderson, had been associated together in a criminal operation involving the theft and resale of various types of property. Authorities attempted to interview the defendant at the apartment building where he resided in McHenry, Illinois, and he refused to talk to them. Using a ruse to cause him to believe they had left the building, one investigator remained hidden in a stairwell and overheard certain inculpatory statements that defendant made to a third party. These

remarks were in response to a question as to whether the police believed that defendant had committed the murder. The officer testified that defendant responded "know it, but they can't prove nothing."

A tire track found adjacent to the park where Brown's body had been discovered matched the tires on defendant's motor vehicle. The last precipitation sufficient to obliterate tire tracks had occurred on February 16, 1988. Witnesses were found who ultimately testified that the defendant had quarreled with the victim over the division of the proceeds from their joint criminal activity and had made threats against the victim's well-being. Prior to the time that the present criminal charge was filed, defendant was arrested on another matter. Another prisoner at the jail where he was incarcerated testified that he inquired about the Brown murder at that time and that defendant responded in a manner that confessed involvement in the crime.

The defendant presented an alibi defense wherein he claimed to have been at his residence in McHenry, Illinois, at the time the victim was killed. This claim was only directly supported by the testimony of the defendant's wife. Other witnesses testifying as to defendant's presence at his McHenry, Illinois, residence on the day of the murder last saw him there at 2 p.m. The driving time between McHenry, Illinois, and Bettendorf, Iowa, was established to be approximately two and one-half hours. In rebuttal of defendant's alibi testimony, the State produced testimony from a neighbor of the victim. That witness testified to overhearing the victim's wife conversing with two persons in her Moline apartment around dusk on March 5. He indicated that she called one of these persons "Paul." Moline is located only minutes from Bettendorf. Other facts that relate to the issues on appeal will be set forth in our discussion of the points of law that have been argued by the parties.

I. *Sufficiency of the Evidence to Support the Conviction.*

■ In arguing in support of his entitlement to a directed verdict of acquittal, the defendant urges that the evidence of the State merely raises suspicion or speculation and is not enough to allow a rational fact finder to find, beyond a reasonable doubt, that he was Brown's killer. This argument is built around the proposition that the term "substantial evidence," which is the criterion for reviewing the sufficiency of evidence to support a criminal conviction, denotes some elevated quantity of proof. This is not a correct assumption.

■ For purposes of reviewing criminal convictions, we have defined "substantial evidence" as being "such evidence as could convince a rational trier of fact that defendant is guilty beyond a reasonable doubt." *State v. Robinson,* 288 N.W.2d 337, 339 (Iowa 1980). In making the determination whether that standard is met, the evidence is reviewed in the light most favorable to the State and assisted by all reasonable inferences. *State v. Geier,* 484 N.W.2d 167, 170–71 (Iowa 1992); *State v. Garr,* 461 N.W.2d 171, 173 (Iowa 1990). Although we review all of the evidence in determining its legal sufficiency to support the verdict, we do not ourselves determine whether the evidence established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Robinson,* 288 N.W.2d at 339.

■ Inherent in our standard of review of jury verdicts in criminal cases is the recognition that the jury was free to reject certain evidence, and credit other evidence. In reaching its verdict in this case, the jury could rationally have disbelieved defendant's alibi witnesses and believed from the other evidence in the case, including the threats and inculpatory statements attributed to the defendant, that he was the perpetrator of the crime. The court of appeals erred in concluding otherwise.

Because we disagree with the basis on which defendant's conviction was reversed, it is necessary to consider other assignments of error raised in defendant's argument that the court of appeals did not consider under its theory of the case. These issues include claims of error with respect to: (1) admitting

evidence of statements made by defendant in the hallway of his apartment building, (2) admitting evidence concerning tires taken from defendant's motor vehicle, (3) admitting evidence of a conversation overheard from the victim's wife's apartment prior to her death, (4) failure of the State to produce photographs of footprints found at the scene of the crime in response to a motion to produce, (5) failure to preserve and actively investigate all footprints at the scene of the crime, and (6) the use of a willful injury offense as the designated felony in the murder instruction. We separately consider these claims.

II. *Evidence of Statements Overheard in the Hallway of Defendant's Apartment Building.*

■ Defendant contends that unlawful eavesdropping occurred when a law enforcement officer concealed himself in the stairwell of defendant's apartment building and overheard a statement that defendant made to a third party that was deemed to be inculpatory. This circumstance occurred after two officers had gained entry to the apartment building by randomly pushing apartment buzzers until someone let them in the locked building. Upon gaining entry, the officers proceeded to defendant's apartment and attempted to interview him. After defendant declined to speak with them the officers retreated, ostensibly to leave the premises. One of the officers slammed the outside door of the building to give the impression that they were gone. The other officer, however, took this opportunity to conceal himself in a building stairwell in order to eavesdrop on defendant's conversation with a third party in the hallway above.

At defendant's trial, over his objection and motion to suppress evidence, the officer who had eavesdropped was permitted to testify concerning inculpatory statements defendant made to a third party. Defendant asserts that the eavesdropping was unlawful and a violation of the Fourth Amendment to the federal constitution. We disagree. In answering this question, it is not necessary to fully explore the extent to which the occupants of a multiple housing dwelling unit are entitled to an expectation of privacy. What-

ever that expectation of privacy might be, defendant has failed to demonstrate that the eavesdropping activity in the present case was unlawful. At the time of overhearing defendant's statement to a neighbor, the officer was in a place where he was lawfully entitled to be.

The means of entry was in effect a ruse resulting in some occupant of the dwelling granting entry to the common areas of the building. As a result of this occurrence, the officers' presence in the hallways and stairwells of the building was lawful. *See United States v. Matlock,* 415 U.S. 164, 169–71, 94 S.Ct. 988, 992–93, 39 L.Ed.2d 242, 248–49 (1974); *People v. Savage,* 630 P.2d 1070, 1073–74 (Colo.1981); *State v. Brown,* 408 So.2d 846, 848 (Fla.App.1982); *Wright v. State,* 593 N.E.2d 1192, 1199 (Ind.1992). The officers' continued presence after defendant rebuffed their efforts to interview him was not unlawful until such time as someone with authority requested them to leave. Defendant never claimed to have so instructed the officers nor was there evidence that anyone else did. The district court properly denied defendant's request to suppress this evidence.

III. *Evidence Concerning Tires Removed From Defendant's Motor Vehicle.*

■ Within a few days of the commission of the crime, police officers asked the defendant if he would consent to the removal of the tires from his motor vehicle as an aid in their investigation. The record reflects that defendant agreed to that request conditioned only upon the officers providing suitable replacement tires. When the replacement tires were supplied, the defendant bickered somewhat as to their quality but did not articulate either expressly or impliedly a rejection of the acts of the officers in taking possession of the tires that had been on his motor vehicle.

Defendant now urges that the consent to take the tires was nullified *ab initio* because in fact the replacement tires were not of a satisfactory condition. We believe that the defendant's argument on this point must fail on two grounds. First, the district court found against the defendant on the facts surrounding the quality of the replacement

tires. Second, defendant without question knew the purpose for which the officers were taking the tires. In order to revoke his consent to the taking for that purpose, once given, he was required to clearly inform the appropriate official that the initial consent had been limited, withdrawn, or revoked. *State v. Stanford,* 474 N.W.2d 573, 575 (Iowa 1991). Any attempt to rescind the consent after investigation revealed that the tires were critical evidence in the pending criminal investigation would be ineffective. *See State v. Myer,* 441 N.W.2d 762, 765–66 (Iowa 1989).

IV. *Evidence of Conversations Overheard From the Victim's Wife's Apartment.*

■ Defendant asserts error in the admission of evidence concerning conversations coming from the victim's wife's apartment about dusk on March 5. In those conversations, the victim's wife purportedly identified someone in her apartment as "Paul." The objections that defendant articulated at trial concerning the admissibility of this testimony were based on hearsay, relevancy, and the limitations placed on evidence of other crimes by Iowa Rule of Evidence 404. The district court overruled the relevancy and other-crimes objections and found that the hearsay objection was obviated because the statement in question was an excited utterance.

On appeal, defendant has abandoned any challenge to this evidence based on hearsay or relevancy. He continues to advance his contentions based on rule 404. Defendant also seeks to show error in allowing this testimony based on the trial court's pretrial ruling on a motion in limine. As to the latter claim, an examination of the motion in limine and ruling thereon convinces us that both the motion and ruling related to another subject. That subject was how extensively the State could develop the circumstances surrounding the finding of the body of Brown's wife. The court tentatively approved the allowance of evidence demonstrating that the body was found without further embellishment. The State acceded to that ruling with respect to evidence describing the body or circumstances of death.

We are convinced that the district court's ruling on defendant's motion in limine did not relate to the issue now under consideration. The testimony being challenged involved occurrences that preceded the death of Brown's wife. It was offered as rebuttal testimony to defendant's claim of alibi. Its purpose was to show that a person named "Paul," who knew defendant's wife, was in Moline about dusk on March 5. That was the time defendant claimed to have been in McHenry. This testimony was added to the minutes of testimony by an amendment after the court's ruling on the motion in limine.[1]

In considering defendant's evidentiary challenges based on rule 404, we entertain substantial doubt that this rule is applicable. The evidence in question related to matters occurring prior to the death of Brown's wife. Nothing contained in the challenged testimony established a criminal activity on the part of anyone. If rule 404 was implicated by this testimony, we believe it was relevant for one of the independent purposes listed in rule 404(b), *i.e.,* "opportunity." Although defendant now asserts that the prejudicial effect of this evidence was of constitutional magnitude, sufficient to deny him due process, this was manifestly not the case. We have recognized that, although evidence of other crimes will always be prejudicial to the defendant, that type of prejudice does not outweigh the public interest in allowing the State to fully develop its case. *State v. McDaniel,* 512 N.W.2d 305, 308 (Iowa 1994). The district court did not err in overruling defendant's objections to this evidence on the grounds that were advanced in the district court.

V. *The State's Handling of Footprint Evidence.*

■ Defendant asserts that he did not receive a fair trial because the State did not preserve evidence of a large number of footprints present near the area where Brown's body was discovered. This omission, defendant claims, denied him the opportunity to eliminate himself as a suspect by showing that none of these footprints were his. He

---

1. Defendant was granted an opportunity to take this witness's deposition prior to the time he testified. Defendant did not challenge this testimony as being untimely alibi rebuttal based on the requirements of Iowa Rule of Criminal Procedure 10(11)(a).

**214**

also asserts that he was prejudiced by the State not producing scaled photographs of some of the footprints in response to the court's order to produce relevant evidence. With respect to the first of these contentions, defendant concedes that more than 100 footprints were found in the area. To assume that all of these could have been preserved is not realistic. The present record is simply inadequate to allow us to judge the reasonableness of the State's decision to photograph some, but not all, of these footprints.

With respect to defendant's second contention, we agree that the court's order to produce was violated. The prosecutor produced those photographs in his possession but not additional photographs in the custody of the Department of Criminal Investigation. It was the latter photographs that included the scaled depictions of the footprints, *i.e.*, photographs with a ruler laid beside the imprint. The State was required to produce all photographs responsive to the court's order regardless of which state agency was responsible for their custody.

Notwithstanding the fact that the court's order was violated, defendant has not established a basis for reversing his conviction as a result of that violation. He discovered the existence of the photographs during the trial and had an opportunity to examine them. Having done so, he did not move for a mistrial based on violation of the order to produce nor did he move for a continuance in order to utilize these photographs as effectively as the circumstances would permit. We therefore have nothing to review in the nature of an improper trial court ruling. *State v. Holbrook*, 261 N.W.2d 480, 482 (Iowa 1978) (appellate court cannot review an issue unless it was raised in the trial court).

Although defendant perhaps did not have time during the trial to examine the photographs in sufficient detail to evaluate their exculpatory effect, if any, there is no reason to assume that he did not have time to do this prior to the time that he filed his motion for new trial in the district court. Defendant made no evidentiary showing in his motion for new trial to establish prejudice based on any matter that these photographs revealed. Absent any showing of prejudice, there is no

basis upon which to predicate a reversal of the conviction.

VI. *Use of a Willful–Injury Offense as the Designated Felony in the Felony Murder Instruction.*

Defendant contends that the district court erred in employing a willful-injury offense as a designated felony in its jury instruction on felony murder under Iowa Code section 707.2(2) (1991). He asserts that felonious assaults must be considered to have merged within the lesser offense of second-degree murder. We rejected the contention that defendant is making in *State v. Beeman*, 315 N.W.2d 770, 777 (Iowa 1982). Unless that decision is to be overruled, his present argument is without merit.

The *Beeman* case was decided in 1982. Since that time, we have been asked to depart from its holding on several occasions. *See State v. Ragland*, 420 N.W.2d 791, 793 (Iowa 1988); *State v. Mayberry*, 411 N.W.2d 677, 682–83 (Iowa 1987); *State v. Phams*, 342 N.W.2d 792, 795 (Iowa 1983). We have steadfastly declined these invitations to disavow the principles established in *Beeman*. We again do so here. The issue presented is entirely one of statutory interpretation. A settled construction of a statute, coupled with the passage of time, invokes the principle that issues of statutory interpretation settled by the courts and not disturbed by the legislature have become tacitly accepted by the legislative branch. *See Lockray v. State*, 495 N.W.2d 754, 755 (Iowa 1993).

VII. *Ineffective–Assistance–of–Counsel Claims.*

Finally, we consider an argument that defendant advances concerning claimed ineffective assistance of counsel. This argument, which appears to be based on the Sixth Amendment to the federal constitution, asserts that, notwithstanding the fact that certain rulings of the court and certain conduct of the prosecutor were not objected to at trial, these matters so hampered his trial counsel that they caused counsel to perform below the standard of competency demanded by the Sixth Amendment. Defendant asserts that no waiver of this claim exists on error

preservation grounds because it is not necessary for counsel to preserve error concerning counsel's own ineffectiveness. In support of this contention, defendant relies on the decision of this court in *Zacek v. Brewer*, 241 N.W.2d 41 (Iowa 1976).

In the *Zacek* decision, we overturned a conviction on a plea of guilty based upon the State's conduct in actively deceiving defendant's counsel concerning certain key pieces of evidence in the case. We concluded that, among other rights of the defendant that may have been violated by the State's action, his Sixth Amendment right to the effective assistance of counsel was directly violated.

We believe that the *Zacek* decision does not aid defendant in seeking to avoid the consequences of failure to preserve error in the present case. The basis for the decision in *Zacek* was the absence of a knowing, intelligent, and informed decision to enter a plea of guilty. The absence of key information critical to that decision was attributed to affirmative unlawful conduct by State officials. *Zacek* does not stand for the proposition that any waiver of constitutional or statutory rights by the accused, which may affect his counsel's performance, may be ignored.

In criminal prosecutions, some rights or opportunities of the defendant may be waived and others may not. With respect to guilty pleas, the requirement that the plea be entered knowingly and intelligently is a constitutional standard that may not be waived. *Zacek*, 241 N.W.2d at 50; *State v. Burtlow*, 210 N.W.2d 438, 439 (Iowa 1973). On the other hand, we have consistently held that matters occurring in connection with the trial of a case that are asserted as error on appeal are waived unless they were complained of at the trial court level. *State v. Taylor*, 336 N.W.2d 721, 726 (Iowa 1983); *State v. Morehouse*, 316 N.W.2d 884, 886 (Iowa 1982); *State v. Jump*, 269 N.W.2d 417, 430 (Iowa 1978); *Holbrook*, 261 N.W.2d at 482. In the case last cited, we stated:

> We are a court of review, not a nisi prius court. We cannot "review" an issue unless it was raised in the trial court. The requirement that the issue be raised in the trial court is not something new or a device imposed as a barrier against constitutional rights. It is of long-standing and applies generally to claimed errors of all kinds, constitutional and otherwise; nor is it a rule peculiar to Iowa.

*Holbrook*, 261 N.W.2d at 482. There is no conflict between that principle and the principles applied in *Zacek*.

We have considered all issues presented and find no basis for reversing defendant's conviction. The judgment of the district court is affirmed.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**