**STATE of Iowa, Appellee,**

v.

**Bethann Deshaye HICKMAN, Appellant.**

**No. 96–2259.**

Supreme Court of Iowa.

March 25, 1998.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Roxann M. Ryan, Assistant Attorney General, William E. Davis, County Attorney, and Julie A. Walton, Assistant County Attorney, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

HARRIS, Justice.

Defendant appeals her convictions both of willful injury in violation of Iowa Code section 708.4 (1995) and multiple acts of child endangerment in violation of Iowa Code section 726.6A. We find ample evidence to support the willful injury conviction and to support a conviction of child endangerment. We however find insufficient evidence to support the "multiple" element of her multiple-acts-of-child-endangerment conviction. We affirm in part, reverse in part, and remand for resentencing.

Damarcell Tesch, the infant victim in this case, was born March 4, 1995, son of Billie Jo Tesch. Billie Jo, a single parent with a moderate learning disability, had ended any association with Damarcell's father and with her own parents. Because she had difficulty holding a job and supporting herself, she lived with various people following Damarcell's birth.

In January 1996 Billie Jo became acquainted with defendant Bethann Hickman. Al-

though Billie Jo continued to pay rent for her apartment, she and Damarcell moved in with Bethann in early January 1996. During this time Billie Jo cared for Damarcell and Bethann's child.

In February 1996 Billie Jo began working at a nursing home. At this time Bethann stopped working and provided child care to Damarcell while Billie Jo was at work. Billie Jo usually worked from 2 p.m. until 11:30 p.m., but periodically worked a double shift and would not come home until 7 a.m. Because Billie Jo cannot drive, Bethann would drive her to and from work.

At the beginning of March, Billie Jo moved back to her own apartment. Bethann continued to baby-sit Damarcell. On March 4, Bethann picked up Damarcell at the apartment and Billie Jo took the bus to work. Billie Jo did not see Damarcell until called to the hospital on March 6. Billie Jo testified Damarcell had some bruises near his jaw and on his legs at the time she left him with Bethann.

On March 6, Bethann called paramedics to her apartment in Davenport where Damarcell was lying in bed and nonresponsive. Bethann claims he had fallen off the couch and had a seizure while she was in another room. Because various bruises were observed on Damarcell's face, head, chest, buttocks, and leg, police were called. A doctor noted petechiae, red marks on the left side of Damarcell's face, indicating blood vessels broken within twenty-four hours of an injury. The doctor also believed the bruises on the face were caused by a hard slap or a grab. The doctor noted a total of thirteen bruises.

A CT scan showed several areas of blood over the surface of the brain, particularly over the right side. There appeared to have been two separate areas of bleeding in Damarcell's brain so it was concluded he sustained two separate blows.

Bethann was charged with multiple acts of child endangerment and with willful injury. The case was tried to a jury, which returned guilty verdicts on both counts. Bethann was sentenced to an indeterminate term not to exceed fifty years for multiple acts of child endangerment, and not to exceed ten years for willful injury. The sentences were ordered to run concurrently. The matter is before us on Bethann's appeal.

I. The scope of review on appeal from a criminal conviction is narrow. *State v. Arnold,* 543 N.W.2d 600, 602 (Iowa 1996). In reviewing challenges to the sufficiency of the evidence, we examine the record in the light most favorable to the State. *State v. Crone,* 545 N.W.2d 267, 270 (Iowa 1996). A jury verdict is binding on us unless it lacks substantial evidence to support it. Iowa R.App. P. 14(f)(1); *State v. Bush,* 518 N.W.2d 778, 779 (Iowa 1994). Substantial evidence is evidence that could convince a rational trier of fact beyond a reasonable doubt that the defendant is guilty of the crime charged. *State v. Terry,* 544 N.W.2d 449, 451 (Iowa 1996); *State v. Anderson,* 517 N.W.2d 208, 211 (Iowa 1994). The substantial evidence standard does not suggest an elevated standard of proof. *Anderson,* 517 N.W.2d at 211. We accept all legitimate inferences and presumptions favorable to the prosecution which may be fairly and reasonably deduced from the record. *State v. Bass,* 349 N.W.2d 498, 500 (Iowa 1984).

II. The trial court correctly instructed that the willful-injury charge under Iowa Code section 708.4 required proof of the following elements:

(1) that on or about March 6, 1996, Bethann committed an act, assault, or aided and abetted such act;

(2) that Bethann specifically intended to cause a serious injury to Damarcell; and

(3) the assault caused a serious injury to Damarcell.

Bethann contends there was not sufficient evidence that she caused the serious head injury to Damarcell. She asserts Billie Jo's testimony was contradictory and vague and was therefore incredible. Bethann, who contends Damarcell suffered the injury during the prior weekend when he was in his mother's care, also maintains the medical evidence that purported to show she caused the injuries was insufficient.

Much, though certainly not all, of the State's evidence establishing these elements consisted of Billie Jo's testimony which, with

some justification, defendant assails as being inconsistent. These inconsistencies however do not make her an incredible witness. We have said numerous times it is the province of the jury to assess the credibility of witnesses. *See State v. Liggins,* 557 N.W.2d 263, 269 (Iowa 1996); *Anderson,* 517 N.W.2d at 211; *State v. Allen,* 348 N.W.2d 243, 247 (Iowa 1984); *State v. Martin,* 341 N.W.2d 728, 729 (Iowa 1983); *see also United States v. Kime,* 99 F.3d 870, 885 (8th Cir.1996) (district court's findings regarding witness' credibility are virtually unreviewable on appeal); *United States v. Parker,* 32 F.3d 395, 399 (8th Cir.1994) (same).

Bethann challenges other evidence offered by the State, also on the basis of inconsistency. The challenge suffers the same fate. Taking all the evidence in the light most consistent with the verdict, there was ample evidence to support a finding that Bethann caused Damarcell's severe head injury and accompanying bruises. The jury could easily reject her contrary theory. *See State v. Frake,* 450 N.W.2d 817, 818–19 (Iowa 1990). Bethann's first assignment is without merit.

■ III. The evidence was also ample to support a finding of child endangerment under Iowa Code section 726.6.[1] On this count the court correctly instructed as follows:

1. On or about January 1, 1996, through and including March 6, 1996, Bethann was a person having custody or control of the victim.

2. The victim was under fourteen years of age.

3. Bethann acted while in custody or control, or aided and abetted another who had custody or control, of the victim in one or more of the following ways:

a. knowingly acted in a manner creating a substantial risk to the victim's physical health or safety; or

b. with specific intent used unreasonable force or cruelty that resulted in physical injury to the victim or specifically intended to cause serious injury to him; or

c. knowingly permitted the continuing physical abuse of the victim.

To reach the "multiple" aspect of the offense, the instructions went on to inform the jury that, if they found defendant guilty, they were to answer the following interrogatories:

1. Did the child endangerment result in serious injury to the victim?

2. Did defendant engage in a course of conduct or aid and abet a course of conduct which includes three or more acts of child endangerment, as defined herein, within a period of twelve months involving the victim?

3. Did one or more of the acts referred to in question 2 result in serious injury to the victim?

The jury answered all questions in the affirmative. Bethann claims there was insufficient evidence to support a finding there were three or more acts of child endangerment.

The State insists that in several ways it proved there were multiple acts of endangerment. First, Billie Jo testified she saw Bethann hit Damarcell with a belt, her hand, a shoe, and a spoon. Second, at some time before the March incident Bethann told Billie Jo she should cancel her appointment with officials[2] because Damarcell was so badly bruised. Third, James Hickman, Bethann's cousin, testified that, while he was staying at Bethann's house, Damarcell "was always getting whupped" by Bethann. He said the

---

1. The crime of child endangerment is defined and proscribed in Iowa Code § 726.6. Iowa Code § 726.6A provides for enhanced punishment for multiple acts of child endangerment, rendering it a class "B" felony, punishable by confinement for no more than 50 years. It defines multiple acts as

a course of conduct including three or more acts of child endangerment as defined in section 726.6 within a period of twelve months involving the same child ... where one or

more of the acts results in serious injury to the child ... or results in a skeletal injury to a child under the age of four years....

Under Iowa rule of criminal procedure 6(1), where a public offense carries with it a lesser-included offense, only the major one should be asserted and carries a lesser one with it.

2. Officials of WIC (women, infants and children) an agency assisting women with children.

spankings were "repeatedly, hard, open-handed." He also said Damarcell was "terrified" of Bethann, constantly cried, and was even afraid of her voice.

■ Although we think there was sufficient evidence to support a conviction of child endangerment under Code section 726.6, *see Arnold,* 543 N.W.2d at 603–04, we agree that the evidence fails to support a multiple-acts conviction under Code section 726.6A. The three separate acts required under the latter statute should be established with enough precision to enable a jury to be satisfied beyond a reasonable doubt of a time and place where each of the three acts occurred. The reference in Code section 726.6A to "a course of conduct" should not be read to mean that anything less precise can suffice. With the exception of the event requiring Damarcell's hospitalization, there are merely references in the record, indefinite in time, that Bethann spanked or "whupped" Damarcell several times. The record is devoid of evidence signifying that the injuries—if any—occurred from the alleged spankings or "whuppings." There is no medical evidence, photographs, or testimony demonstrating that Damarcell's bruises or injuries were derived from those alleged incidents. There is not a sufficient showing that any injuries, except for the one resulting in the hospitalization, can be ascribed to Bethann. We do not even know who was caring for Damarcell when those injuries were sustained.

We conclude that, although Damarcell unquestionably suffered outrageous mistreatment, perhaps repeatedly, three separate acts of endangerment were not established sufficiently to be asserted against Bethann. Her conviction under section 726.6A must be reversed.

■ IV. Bethann also asserts that the willful injury and child endangerment counts asserted against her merge under Iowa Code section 701.9. It provides:

No person shall be convicted of a public offense which is necessarily included in another public offense of which the person

is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

This provision is a statutory implementation of, and is coterminous with, the protection against former jeopardy guaranteed by the fifth amendment of the federal Constitution. *State v. Halliburton,* 539 N.W.2d 339, 344 (Iowa 1995). When that protection is not implicated, section 701.9 is not violated. *Id.* So the analysis begins with an inquiry into whether former jeopardy has been violated. Where the question is one involving a prosecution in which the same criminal conduct violates multiple statutory crimes, the focus is on whether the legislature intended to authorize cumulative punishment under the different statutes. If so a single prosecution can, without violating double jeopardy, result in multiple punishments. *State v. Perez,* 563 N.W.2d 625, 627 (Iowa 1997).[3] So our question becomes what punishments the legislature intended to provide under two counts. *Halliburton,* 539 N.W.2d at 344; *State v. McKettrick,* 480 N.W.2d 52, 57 (Iowa 1992). We first gather that intent from the language of the statute. *Perez,* 563 N.W.2d at 628. "If the statutory language is plain and the meaning is clear we do not search for the legislative intent beyond the express terms of the statute." *Horsman v. Wahl,* 551 N.W.2d 619, 620–21 (Iowa 1996).

We think the legislature intended multiple punishments for both crimes. Section 726.6 provides many ways in which child endangerment may be committed. A person may commit child endangerment without physical contact with the child. This may occur through willfully depriving a minor of health care, or by an intentional act which causes substantial mental or emotional harm. *See* Iowa Code §§ 726.6(1)(c), (d). Only by imposing cumulative punishments can we give effect to the other existing alternatives of section 726.6. *See Halliburton,* 539 N.W.2d at 344; *State v. Lewis,* 514 N.W.2d 63, 69 (Iowa 1994). This is because it is necessary,

---

**3.** In such circumstances we need not resort to the rule articulated in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (prescribing the "same elements" test as a means to determine legislative intent).

where possible, to give effect to an entire statute. *See* Iowa Code § 4.4(2).

Further evidence of the legislature's intent is found in the differing purposes of the two statutes. *See Halliburton,* 539 N.W.2d at 344 (when statutes have differing purposes, it is evidence that legislature intended cumulative punishments). Although both sections may punish a person who causes a serious injury, section 708.4 only prohibits an act, assault, which results in a serious injury. Further, section 708.4 applies to *any* person. In contrast, section 726.6 is directed only toward parents, guardians, or persons having custody or control over a child. Additionally, section 726.6 prescribes punishment for many acts other than one which results in a serious, physical injury. These sections address different dangers. Section 708.4 concerns any person who causes, without justification, a serious injury, whereas section 726.6 is exclusively aimed at protecting children from parents or persons who have control or custody over them.

Iowa Code section 701.9 is inapplicable.

V. The State urges us to adopt the "concurrent sentencing doctrine" discussed in some federal cases under which a court may exercise the discretion not to rule on legal issues affecting less than all of the counts in the indictment when at least one count has been upheld and the sentences are concurrent. *United States v. Lampley,* 573 F.2d 783, 788 (3d Cir.1978). The federal courts have noted the doctrine is a discretionary one, and that it "should not be applied where there is a significant risk of greater adverse collateral consequences from multiple convictions." *Id.* Under our holding in this case we deem it inappropriate to consider whether we should adopt the doctrine.

The judgment against defendant for violating Iowa Code section 708.4 is affirmed. Under the jury verdict defendant stands convicted of violating Iowa Code section 726.6 and that judgment is affirmed. The judgment against the defendant for violating Iowa Code section 726.6A must be, and it is, reversed. The case is remanded for resentencing in accordance with this decision.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.