# IN THE COURT OF APPEALS OF IOWA

No. 14-0864
Filed August 19, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MADISON MARIE CLAY,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Buchanan County, David F. Staudt, Judge.


        Madison Clay appeals her convictions, following a guilty plea and sentence for robbery in the second degree, attempted burglary in the first degree, and assault while participating in a felony. **CONVICTIONS AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**


        Judith O'Donohoe of Elwood, O'Donohoe, Braun, White, L.L.P., Charles City, for appellant.

        Thomas J. Miller, Attorney General, Tyler J. Buller and Jean C. Pettinger, Assistant Attorneys General, Louis S. Sloven, Student Legal Intern, and Shawn Harden, County Attorney, for appellee.


        Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**VOGEL, P.J.**

Madison Clay appeals her convictions, following a guilty plea and sentence for robbery in the second degree, attempted burglary in the first degree, and assault while participating in a felony. She claims trial counsel was ineffective for allowing her to plead guilty, asserting there was no factual basis for the plea. She further argues her conviction for assault while participating in a felony should merge with her robbery conviction. Finally, she argues *State v. Lyle*, 854 N.W.2d 378 (Iowa 2014), requires her sentence to be vacated and her case remanded for resentencing.

We conclude there is a factual basis to support Clay's plea and therefore counsel was not ineffective for allowing her to plead guilty. Moreover, her robbery and assault convictions should not merge, as there were separate assaults on which the charges were based. However, pursuant to *Lyle*, we vacate Clay's sentence so she may have an individualized sentencing hearing. Consequently, we affirm Clay's convictions but vacate the sentence and remand.

**I. Factual and Procedural Background**

On February 11, 2014, at approximately 11:00 a.m., police arrived at the scene of a robbery. Adam Yarlot was living in the residence at the time. He told officers he heard loud knocking at the front door, which woke him. After he came out of his bedroom, he saw a black man, a white man, and a young blond woman.[1] These individuals were later identified to be Seth Holschlag, Ethan

---

[1] A fourth person, Nathan Rosonke, also participated in the crimes, but Yarlot did not mention seeing him.

Waltzoni, and Clay,[2] respectively. Yarlot stated that as soon as he exited his bedroom Clay hit him in the head with a hammer, causing him to fall. Holschlag then held Yarlot down, and Waltzoni pointed a gun at him and told him to "remain quiet."

Officers investigated the crime and discovered the identity of the perpetrators, whom police interviewed. With respect to those interviews, the minutes of evidence contained the following:

> Madison admitted that Seth, Nathan & her came to Independence the day before . . . . In the morning Ethan stated that he needed some money because his rent was past due, so Ethan suggested that they break in to this house that was commonly known to sell a lot of marijuana.
> Madison admitted that she knocked on the front door of the residence & did not receive an answer. She then walked around to the back of the residence and discovered the rear entrance unlocked. She waived in Nathan, Ethan, and Seth. They checked the downstairs area and could not find the marijuana, etc. Next they went upstairs where they were confronted by a white male. Madison stated that she had a hammer in her hand and went up to him and hit him in the side of his head with the hammer. When the victim dropped to the floor, Seth got on top of the victim in order to control him.
> . . . .
> Madison later admitted that the rifle was stolen from the residence along with a black bag with marijuana paraphernalia. She stated that these two items were discarded along a rural, gravel ditch between Oelwein & Fredericksburg.
> . . . .
> Meyer took the lead with Madison. She confirmed that she had spent the night at Ethan's in Independence and was with Seth and Nathan. Madison initially denied having gone to another house in Independence stating they just left to come home. Meyer advised her that we would rather have her not talk than lie. I reiterated this and told her that we already knew what had happened and that I was told that she would be taking responsibility for her role in what happened today.
> Madison responded[,] "We went up into this fucking drug dealer's house because he's a punk ass kid is [sic] selling drugs to

---

[2] Clay was a juvenile at the time of the crime.

a bunch of little kids, took all his bongs and pipes out of there and I hit him with a hammer cause he came at me." She said that she was told that they were "planning to rob this house" and asked if she was "down." She said she told them yes. She said the hammer was from inside the house. We clarified with her that their intent appeared to be to burglarize the home and take the drugs. They did not believe anyone was home and were surprised by the resident. She said that after hitting the guy with the hammer Seth got on top of him to hold him down.

. . . .

Madison did agree that the plan was Ethan's idea and that he brought it to her and Seth but he did not pressure them or anything . . . . Madison confirmed that they sent her to the front door first and the plan was for her to ask for a female they thought might be there if someone answered the door. Madison said nobody came to the door so they went in not expecting anyone to be there and not expecting to hurt anyone. She said the plan was to just take their stuff and leave. . . . We talked about her criminal conduct in this case and she acknowledged that she could have easily killed the guy when she hit him in the head with a hammer.

On February 18, 2014, the State charged Clay and her co-defendants by trial information with six counts, including robbery in the first degree, burglary in the first degree, intimidation with a dangerous weapon, two counts of going armed with intent, and assault while participating in a felony. All defendants were charged alternatively as aiders and abettors, or by participating in joint criminal conduct, with regard to each count.

On April 29, 2014, Clay pled guilty to second-degree robbery, in violation of Iowa Code sections 711.1 and 711.3 (2013); attempted burglary in the first degree, in violation of Iowa Code sections 713.2 and 713.4; and assault while participating in a felony, in violation of Iowa Code sections 708.3 and 902.7. The plea agreement, signed by Clay, was filed the same day; in the plea document, she initialed a paragraph that stated: "I agree that the Minutes of Testimony are

substantially correct." Additionally, during the plea colloquy, the following exchange occurred:

> The Court: Have you had an opportunity to read through these minutes of testimony; which are the police reports, victim statements, things like that?
> [Clay]: Yes.
> The Court: You may not agree with everything that's said in there, but for the most part is it accurate?
> [Clay]: Yes.
> The Court: Do you have any objection to me incorporating into this plea-taking procedure these minutes of testimony to help form a factual basis that you did, in fact, commit this crime? Do you have any objection to that?
> [Clay]: No.

Following the acceptance of the plea, and pursuant to the plea agreement, the district court sentenced Clay to a term of imprisonment not to exceed ten years for the robbery conviction, ten years for the burglary count, and five years for the assault conviction, all to run concurrently. These are the statutory sentences for each crime. No individualized sentencing hearing was held, nor were specific findings made with regard to the reasons Clay should be incarcerated for the amount of time imposed. Clay appeals her convictions and sentence.

## II. Standard of Review

We review constitutional claims de novo. *See State v. Aguiar-Corona*, 508 N.W.2d 698, 701 (Iowa 1993). To the extent Clay's merger claim addresses statutory interpretation, we review for correction of errors at law. *See State v. Daniels*, 588 N.W.2d 682, 683 (Iowa 1998).

## III. Ineffective Assistance of Counsel

Clay first asserts counsel was ineffective for allowing her to plead guilty to the charges. She argues there was not a factual basis supporting the plea, and but for counsel's breach of duty, she would not have pleaded guilty. She takes issue with the lack of specificity in the minutes of evidence, in addition to the alleged lack of proof supporting each element of the crimes to which she pled.

A defendant may raise an ineffective-assistance claim on direct appeal if the record is adequate to address the claim. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). We may either decide the record is adequate and issue a ruling on the merits, or we may choose to preserve the claim for postconviction proceedings. *Id.* To succeed on this claim, the defendant must show, first, that counsel breached an essential duty and, second, that he was prejudiced by counsel's failure. *Id.*

A factual basis upon which to base a guilty plea is sufficient when the record supports the crime charged. *State v. Oritz*, 789 N.W.2d 761, 764 (Iowa 2010). This record may consist of statements by the defendant made in the plea colloquy, or the facts contained in the minutes of evidence. *Id.* Additionally, "[t]he defendant's admission on the record of the fact supporting an element of an offense is sufficient to provide a factual basis for that element." *State v. Philo*, 697 N.W.2d 481, 486 (Iowa 2005).

Here, the record demonstrates the minutes of evidence contain a sufficient factual basis supporting each conviction, as detailed below. This alone is enough to support the factual basis. *See Oritz*, 789 N.W.2d at 764. However, during the plea hearing and in the plea document itself, Clay also agreed that the

facts contained in the minutes were "for the most part accurate." Therefore, in analyzing whether a sufficient factual basis supports Clay's plea, we may rely on these admitted-to facts. *See id.*; *see also Philo*, 697 N.W.2d at 486.

To satisfy the elements of robbery in the second degree, the State must establish Clay: (1) had the intent to commit a theft; and (2) committed an assault upon another, threatened another or put them in fear of immediate serious injury, or made an immediate threat to commit a forcible felony, in furtherance of the intended theft or escape. *See* Iowa Code § 711.1. The minutes state Clay admitted to police officers that she and the other two males went into the house to steal marijuana. Yarlot's statement, in combination with Clay's admission, also supports the second element of assault—Clay hit Yarlot in the head with a hammer during the commission of the robbery. Thus, both elements of robbery in the second degree were satisfied, and a sufficient factual basis supports this conviction. *See id.*

Clay's second charge, attempted burglary in the second degree, requires the State to prove the defendant: (1) had the intent to commit a felony, assault, or theft in an occupied structure where one or more persons were present; (2) entered the occupied structure, either without permission or by breaking in; and (3) either possessed a dangerous weapon or intentionally or recklessly inflicted bodily injury on any person, while attempting the burglary.[3] *Id.* §§ 713.1, .4.

---

[3] The third element may also be satisfied if the defendant possessed an explosive or incendiary device or material. *See* Iowa Code § 713.4.

As noted before, Clay stated to police officers she and her codefendants had the intent to break into Yarlot's residence. Additionally, Yarlot was present in the home, and it is undisputed Clay did not have permission to be in the residence. Moreover, Clay's codefendant, Waltzoni, possessed a gun, which is enough to satisfy the dangerous-weapon element; this also renders moot the issue of whether the hammer was a dangerous weapon. *See Ortiz*, 789 N.W.2d at 765 n.1 (citing Iowa Code section 703.1 (2009) and noting the defendant "did not have to use a dangerous weapon in the [burglary] to be convicted . . . as long as one of the coparticipants possessed a dangerous weapon"). Clay also hit Yarlot in the head with a hammer. Consequently, the third element is satisfied through both alternatives, and otherwise, a factual basis supports Clay's guilty plea to attempted burglary in the second degree. *See* Iowa Code §§ 713.1, .4.

To be guilty of assault while participating in a felony, the State must prove Clay committed an assault within the meaning of Iowa Code section 708.1; was in the immediate possession and control of a dangerous weapon, displayed a dangerous weapon in a threatening manner, or was armed with a dangerous weapon; and all while participating in a forcible felony. *See* Iowa Code §§ 708.3, 902.7. Though Clay argues a hammer is not a dangerous weapon, her codefendant possessed a rifle, which is indisputably a dangerous weapon within the meaning of the statute. *See State v. Dallon*, 452 N.W.2d 398, 399–400 (Iowa 1990) (holding a firearm that shoots either BBs or pellets constitutes a dangerous weapon). The fact her codefendant possessed a firearm is attributable to Clay when determining whether Clay possessed a dangerous weapon. *See State v. Hustead*, 538 N.W.2d 867, 870 (Iowa Ct. App. 1995) (noting that "an aider and

abettor is liable for any criminal act which in the ordinary course of events was the natural and probable consequence of the criminal act encouraged"). Additionally, the evidence established the rifle was pointed at Yarlot's head, which constitutes an assault. *See* Iowa Code § 708.1. Moreover, as noted above, sufficient evidence supports the robbery conviction, and therefore satisfies the element Clay assaulted Yarlot while participating in a forcible felony. Consequently, there was a factual basis supporting the conviction for assault while participating in a felony. Thus, Clay's ineffective-assistance claim fails, as counsel breached no duty when allowing Clay to plead guilty to the charges. *See State v. Greene*, 592 N.W.2d 24, 29 (Iowa 1999) (stating counsel is not ineffective for failing to pursue a meritless argument).

## IV. Merger

Clay next claims her second-degree-robbery conviction should merge with her crime of assault while participating in a felony. She relies on *State v. Wilson*, 523 N.W.2d 440, 441 (Iowa 1994), which held the charges of assault while participating in a felony and robbery in the second degree should merge.

The merger doctrine, codified in Iowa Code section 701.9, provides:

> No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted. If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only.

A sentence that does not comply with section 701.9 is illegal and void. *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). "In deciding whether a lesser crime is included in a greater one, the test is whether, if the elements of the greater offense are established in the manner in which the State sought to

establish them, the elements of the lesser offense have also been established."

*State v. Mapp*, 585 N.W.2d 746, 748–49 (Iowa 1998).  Additionally, if the greater

offense cannot be committed without also committing the lesser offense, the

lesser is included in the greater; this is known as the "impossibility" test.  *State v.*

*Hickman*, 623 N.W.2d 847, 850 (Iowa 2001) (citations omitted).

Clay pled guilty to robbery in the second degree as a lesser-included

offense of the charged crime of robbery in the first degree.  As stated previously,

the elements for this charge are as follows: (1) Clay had the intent to commit a

theft and (2) she committed an assault upon another, threatened another or put

them in fear of immediate serious injury, or made an immediate threat to commit

a forcible felony, in furtherance of the intended theft or escape.  *See* Iowa Code

§ 711.1.  The count of assault while participating in a felony was charged in the

following manner:

> On or about the February 11, 2014, in Buchanan County, Iowa, Seth Michael Holschlag, Ethan Joseph Walztoni, Madison Marie Clay and Nathan Luis Rosonke, individually, by aiding and abetting another, or by participating in joint criminal conduct, did assault Adam Michael Yarlott, while participating in the commission of one or more felony offenses.
>
> During the commission of this offense the Defendants, individually, by aiding and abetting another, or by participating in joint criminal conduct, represented that he/she was in the immediate possession and control of a dangerous weapon, displayed a dangerous weapon in a threatening manner, or were armed with a dangerous weapon in violation of Iowa Code section 902.7.

We agree with Clay that, if the robbery and assault charges were

predicated on a single assault, the two crimes should merge.  *See generally*

*Wilson*, 523 N.W.2d at 441.  However, multiple assaults took place during the

commission of this crime.  These include: Clay striking Yarlot in the head with a

hammer, Holschlag pinning him to the floor, and Walztoni pointing a rifle at Yarlot's head while telling him to remain quiet.

Merger is not required when each charged offense may be proven by a different criminal act. *See State v. McKettrick*, 480 N.W.2d 52, 56 n.2 (Iowa 1992) (noting merger would not preclude "a conviction of both assault with intent to commit serious injury and assault causing bodily injury" when the State proves that "a series of assaults occurred"). Moreover, Clay was charged as an aider and abettor, which renders her codefendants' actions attributable to her. *See Hustead*, 538 N.W.2d at 870 (noting that an aider and abettor is liable for the criminal acts of a codefendant). Thus, the facts of this case demonstrate each crime can be supported by a separate and distinct assault—Clay's conduct of striking Yarlot in the head, as well as either of her two codefendant's actions. Consequently, the crimes of assault while participating in a felony and robbery in the second degree do not merge, and Clay's claim in this regard fails.

**V. Resentencing**

Clay asserts, and the State agrees, that her case should be remanded for resentencing pursuant to *Lyle*.[4] It is undisputed Clay was a juvenile at the time of the offense and that she was not given an individualized sentencing hearing. Rather, she was sentenced to the mandatory minimums pursuant to the plea agreement. This amounts to a constitutional violation. *See Lyle*, 854 N.W.2d at 401 (holding that "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in

---

[4] On October 22, 2014, Clay filed an amended motion to reverse, also relying on *Lyle*. Given our conclusions in this section, her motion is rendered moot.

article I, section 17 of our constitution"). Consequently, we vacate Clay's sentence and remand for resentencing consistent with *Lyle*'s requirements.

**CONVICTIONS AFFIRMED, SENTENCE VACATED, AND REMANDED FOR RESENTENCING.**