**IN THE COURT OF APPEALS OF IOWA**

No. 19-0984
Filed June 3, 2020

**IN THE INTEREST OF J.T.,**

**J.T., Minor Child,**
Appellant.

_____

Appeal from the Iowa District Court for Montgomery County, Amy Zacharias, Judge.

A juvenile appeals his delinquency adjudication. **AFFIRMED.**

Justin R. Wyatt of Woods, Wyatt, & Tucker, PLLC, Glenwood, for appellant.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Considered by Vaitheswaran, P.J., and Doyle and May, JJ.

**MAY, Judge.**

D.S. reported J.T. raped her.  The juvenile court adjudicated J.T. delinquent for committing an act constituting third-degree sexual abuse in violation of Iowa Code section 709.4(1)(a) (2019).  On appeal, J.T. asserts (1) the court should not have excluded J.T. and the public when D.S. testified, and (2) there was insufficient evidence to support the finding of delinquency.  We affirm.

**I. Background Facts and Proceedings**

At the delinquency hearing, D.S. testified to the following facts.  In January 2019, D.S. was a wrestling cheerleader.  On the evening of January 11, D.S. was at school to prepare for a wrestling meet.  D.S., J.T., and another individual went for a walk around the school.  J.T. asked the other individual to leave.  D.S. and J.T. made their way toward an auditorium. They began kissing.  Then J.T. pushed D.S. into the auditorium, forced her into a corner, and began to take off D.S.'s pants.  She told him to stop.  He put a coat over her mouth to quiet her.  He then "brought [D.S.] to the floor and then he started to put his penis in [her]."  She testified he held her down.  When D.S. was finally free, she redressed and left. J.T. told her not to tell anyone or she "would regret it."  She headed to the bathroom to wash her face "so it didn't look like [she] was crying."  A few days later, D.S. told her mother what happened.  Her mother reported the incident to the police.  D.S. also went to the hospital for an examination.

The State petitioned to adjudicate J.T. as delinquent for committing an act constituting sexual abuse in the third degree.  The juvenile court held an adjudicatory hearing.  With the agreement of J.T. and his counsel, only the attorneys, court reporter, and judge were present when D.S. testified.  The juvenile

court ultimately found the State proved beyond a reasonable doubt that J.T. committed the delinquent act alleged. J.T. appeals.

## II. Standard of Review

"Delinquency proceedings are special proceedings that serve as an alternative to the criminal prosecution of a child." *In re A.K.*, 825 N.W.2d 46, 49 (Iowa 2013). "The objective of the proceedings is the best interests of the child." *Id.*

We apply different standards to different issues. We review questions of statutory interpretation for errors at law. *In re M.L.B.*, No. 00-1911, 2001 WL 1659105, at *1 (Iowa Ct. App. Dec. 28, 2001). "We review constitutional challenges de novo." *In re T.H.*, 913 N.W.2d 578, 582 (Iowa 2018). And "[w]e consider the sufficiency of the evidence in juvenile delinquency adjudications de novo."[1] *Id.* "Although we give weight to the factual findings of the juvenile court, especially regarding the credibility of witnesses, we are not bound by them." *A.K.*, 825 N.W.2d at 49. "We presume the child is innocent of the charges, and the State has the burden of proving beyond a reasonable doubt that the [child] committed the delinquent acts." *Id.*

## III. D.S.'s Testimony

J.T. alleges the juvenile "court committed reversible error by excluding the public and defendant from the courtroom during the testimony of the alleged

---

[1] Unlike in a criminal case, we do not view the evidence in the light "most favorable to the State" to determine whether "any reasonable fact finder could have found beyond a reasonable doubt that the [accused] committed the delinquent acts." *A.K.*, 825 N.W.2d at 49.

victim." He contends the court was obligated to conduct a colloquy beyond "asking if everyone was in agreement." And the court's failure to do so resulted in the violation of his rights under the Sixth and Fourteenth Amendments of the United States Constitution, article I section 10 of the Iowa Constitution, and Iowa Code section 602.1601.

We begin with error preservation. "As a rule, a defendant must preserve error by making an objection at the earliest opportunity after the grounds for the objection become apparent." *State v. Halliburton*, 539 N.W.2d 339, 343 (Iowa 1995). "This rule applies equally to constitutional issues."[2] *Id.* But J.T. made no objection when the State proposed closing the hearing so that D.S. could testify with only the judge, the court reporter, and the lawyers present. In fact, both J.T. and his counsel told the court they agreed with the proposal. So we find error was not preserved on J.T.'s claim.

Even if we were to overlook the error-preservation issue, J.T. waived any contrary rights he may have had when he and his lawyer agreed to the State's proposal. *See Martineau v. Perrin*, 601 F.2d 1196, 1199 (1st Cir. 1979) (noting it is well "established that a criminal defendant can 'waive his [or her] constitutional right to a public trial'" (citations omitted)). We note J.T. relies on Iowa Code section 602.1601. It provides that "[a]ll judicial proceedings shall be public, *unless* otherwise specially provided by statute or *agreed to by the parties*." Iowa Code

---

[2] As the State points out, though, "J.T. does not cite any case law in Iowa answering the question whether a juvenile has a constitutional right to a public trial."

§ 602.1601 (emphasis added). And at the adjudicatory hearing, the following record was made:

> [STATE:] At this point I would move the court to allow the alleged victim to testify in essentially an empty courtroom, absent of course the judge, the court reporter, and the two attorneys. I believe that it is going to be traumatic enough for her to give her testimony without other individuals in the room.
>
> THE COURT: And is that an issue that has been discussed with you, [defense counsel]?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: And is that something you also discussed with your client?
>
> [DEFENSE COUNSEL]: Yes, Your Honor.
>
> THE COURT: And what is your position and I can also ask him in a moment too. But what is your position on that?
>
> [DEFENSE COUNSEL]: Your Honor, we are in agreement with allowing the alleged victim to testify without any family members or without the defendant in the courtroom.
>
> THE COURT: And, [J.T.], have you—you had a chance to talk to [defense counsel] about this issue?
>
> [J.T.]: Yes.
>
> THE COURT: And you are in agreement with—you're okay with not being in the courtroom?
>
> [J.T.]: Yes.
>
> THE COURT: And you have had a chance to talk to [defense counsel] about this case?
>
> [J.T.]: Yes.
>
> THE COURT: And specifically you had a chance to—there were depositions taken in this case, and I don't want to know specifically what you talked about, but you had a chance to talk with him about that testimony and about how to proceed with this hearing?
>
> [J.T.]: Yes.
>
> THE COURT: And you don't have any issues with testimony proceeding that way today?
>
> [J.T.]: No.
>
> THE COURT: All right. I will allow the victim to testify with a record being made by the court reporter and just having [the two attorneys] in the courtroom. Certainly if there are any concerns about the testimony or that they are inconsistent with what was previously provided by way of deposition testimony, I would allow you, [defense counsel], time to talk with your client and to address those concerns on cross-examination.
>
> [DEFENSE COUNSEL]: Thank you, Your Honor.

As this dialogue shows, J.T. and his counsel both agreed to the State's proposal for D.S.'s testimony. And they both confirmed J.T. had received legal advice on the issue. So we find J.T. waived any rights he had to a different procedure.[3] *See Martineau*, 601 F.2d at 1199.

## IV. Sufficiency of the Evidence

J.T. also contends there is insufficient evidence to support his adjudication. He points to D.S.'s "faulty, and ever-shifting, testimony," D.S.'s failure to report for three days, and the lack of any lab results.

Iowa Code section 709.4(1)(a) provides "[a] person commits sexual abuse in the third degree when the person performs a sex act" that "is done by force or against the will of the other person." A sex act is defined to include "[p]enetration of the penis into the vagina or anus." Iowa Code § 702.17(1).

D.S. provided specific details of her assault to an examining nurse, to the police, and in her testimony. She testified J.T. held her down and penetrated both her vagina and anus with his penis. And that it was painful. And that she found blood in her underwear afterwards.

Other evidence corroborated D.S.'s account. For example, the examining nurse indicated—both by testimony and in a report—that D.S. had multiple bruises on her inner thighs, including a handprint-shaped bruise. And D.S. told the police

---

[3] We note J.T. takes issue with the adequacy of the juvenile court's colloquy as well as the court's failure to make certain findings. He insists a four-part test had to be satisfied before closing the hearing. *See Waller v. Georgia*, 467 U.S. 39, 48 (1984); *accord State v. Schultzen*, 522 N.W.2d 833, 836 (Iowa 1994). However, that test applies when closures are "over the objections of the accused." *Waller*, 467 U.S. at 47. Here, there was no objection.

where the assault happened. When they investigated, they found dried blood on the auditorium floor where D.S. had said the assault happened.

We note also the juvenile court expressly rejected suggestions that D.S.'s testimony was "unbelievable" or made up "in an attempt to cover up a consensual sexual encounter." We view these comments as findings that D.S.'s testimony was credible. And "we leave determinations of credibility for the trier of fact, who was in a better position to evaluate" witnesses. *In re K.H.*, No. 19-0199, 2020 WL 109585, at *2 (Iowa Ct. App. Jan. 9, 2020); *accord In re A.D.E.*, No. 09-0687, 2009 WL 4842797, at *1 (Iowa Ct. App. Dec. 17, 2009) (noting we give weight to the juvenile court's credibility finding due to "the favorable vantage point of that court").

Based on our de novo review of the record, we defer to the juvenile court's assessment of witness credibility and conclude there is sufficient evidence to support the adjudication.

**V. Conclusion**

J.T. failed to preserve error concerning the procedures used for D.S's testimony. And even if we bypass the preservation issue, J.T. waived any objections when he expressly agreed to those procedures. Finally, we find there is sufficient evidence to support the juvenile court's delinquency adjudication.

**AFFIRMED.**