# IN THE COURT OF APPEALS OF IOWA

No. 22-1743
Filed January 10, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**TONY CECIL ORR JR.,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, David F. Staudt, Judge.


        The defendant appeals his convictions and sentences for intimidation with a dangerous weapon, going armed with intent, and person ineligible carrying a dangerous weapon. **AFFIRMED.**



        Karmen Anderson, Des Moines, for appellant.

        Brenna Bird, Attorney General, and Olivia D. Brooks, Assistant Attorney General, for appellee.


        Considered by Bower, C.J., Chicchelly, J., and Blane, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**BLANE, Senior Judge.**

Tony Cecil Orr Jr. appeals the jury's guilty verdicts and his sentences for the crimes of intimidation with a dangerous weapon, going armed with intent, and person ineligible carrying a dangerous weapon. He argues (1) there was insufficient evidence to support his identification as the shooter, (2) the marshaling instruction regarding going armed with intent was a misstatement of the law, and (3) based upon the erroneous jury instruction the sentences for going armed with intent and intimidation with a dangerous weapon should have merged. Upon our review, we affirm.

## I.    Background facts and proceedings.

The following could be found by the jury based upon the evidence presented at trial. On April 20, 2022, two men entered the Logan Convenience Store in Waterloo. The store clerk on duty, Derrick Tatum, testified he knew the taller of the two men was Alante Amaechi from an encounter with him in the store a few days earlier over the disputed price of a lighter. Tatum did not know the other shorter man, who was wearing a grey hooded sweatshirt with "Backwoods" printed in the center in red lettering, a dark-colored mask, white pants, and black and red Nike sneakers. Tatum's testimony was bolstered by the store surveillance video that recorded the events and was admitted into evidence.

Amaechi started rehashing his earlier disagreement with Tatum. A few minutes into Amaechi's threats, the shorter man followed Amaechi towards the store door. Chris Wright, a store customer, watched Amaechi pass something to that man, which turned out to be a loaded firearm. Amaechi kept threatening Tatum. A few moments later, the shorter man lifted his sweatshirt, pulled a firearm

from the waistband of his pants, stepped towards and fired at least three shots at Tatum, and then ran out the door with Amaechi following after. Although the shorter man wore a mask, at trial Tatum identified Orr as the person who shot at him based upon the eyes, nose, and mouth that were visible.

The State presented additional evidence. On April 20, Destiny Waskow was Alante Amaechi's girlfriend although by the time of trial they had broken up. Waskow testified that she picked up Amaechi and his brother, Orr, at Amaechi's companion's house where Orr was staying on a visit from Memphis, Tennessee. Waskow drove Amaechi and Orr in her black Ford Fusion to the Logan Convenience Store and parked on the street just past the store. Before exiting the vehicle Amaechi tucked a firearm in the side of his pants. Waskow described the firearm as a "cop gun with a long stick," meaning a long magazine. Orr also exited the vehicle. Amaechi walked towards the convenience store followed by Orr. Waskow remained in her vehicle parked in the street. She heard gunshots and saw Orr run out of the store followed by Amaechi.

Amaechi got in the driver's seat, and Orr got in the back passenger seat. Amaechi quickly sped away from the store. After Orr was in the car, he took off his sweatshirt, and Waskow saw him holding the firearm. She heard Orr and Amaechi yelling about what happened in the store. Orr "said that they handed the gun back to each other" and he shot it. They went back to Amaechi's companion's place. Once there Orr and Amaechi grabbed their clothing, including the "Backwoods" sweatshirt Orr was wearing and ran into the house.

Back at the convenience store, Tatum called the police and reported the shooting. Waterloo police officers responded and found three shell casings near

the store entrance and bullet holes on the wall behind the cashier's counter as well as in a cardboard display, cooler door, and the cashier's counter.

On April 29, Waterloo police executed a search warrant at Amaechi's companion's residence, where Orr was staying. There they located a grey hooded sweatshirt with "Backwoods" printed in red lettering and a pair of red and black Nike sneakers. They also located a black extended magazine, a smaller silver and black magazine, and a box of ammunition.

As part of the investigation, Detective Sadd interviewed Orr, which was video recorded and played for the jury. Orr acknowledged that Amaechi was his brother. He admitted the "Backwoods" sweatshirt found during the execution of the search warrant belonged to his girlfriend, and he owned the red and black Nike sneakers. During the interview Orr referred to these items as his clothes. He admitted he was visiting from Memphis, Tennessee, and brought the magazine and bullets to Amaechi's companion's house but did not bring a firearm. When asked about the "mags" and bullets found in the house, Orr explained he did not own a gun and knew that his magazine and bullets were not compatible with the gun used at the convenience store. He also admitted to Detective Sadd that he was with Amaechi before the shooting but did not go into the store with him. Orr claimed he stayed in the car with Waskow and a person he called "TJ" went into the store. Orr first stated he did not know TJ's full name. He then claimed that TJ was his brother, and he was not "going to give his brother's name." When the detective asked about the shooter, Orr claimed the shooter was someone in the car with him that "is like a brother to me," but he did not know his name, even though he brought this person with him to Waterloo. Orr agreed the shooter was

wearing his girlfriend's sweatshirt with the red "Backwoods" lettering and his red and black Nike sneakers, but he could not explain how the shooter got them. Orr also did not know who gave this person the gun. As to the magazines and bullets found at the house where Orr was staying, Orr admitted these were his. Detective Sadd testified these items were consistent with the type of firearm and bullets used in the shooting at the convenience store.

Detective Sadd followed up Orr's interview by checking whether Orr used Facebook. He reviewed cell phone data from Amaechi, his companion, and Orr's girlfriend, and saw a Facebook conversation with a "TCE TJ Grape." He located TCE TJ Grape's Facebook profile, and most of the profile's photos were of Orr. TCE TJ Grape also listed his hometown as Memphis, Tennessee.

The State charged Orr with intimidation with a dangerous weapon, a class "C" felony, in violation of Iowa Code section 708.6(1) (2022); going armed with intent, a class "D" felony, in violation of section 708.8; and person ineligible carrying a dangerous weapon, a serious misdemeanor, in violation of section 724.8B. The jury returned guilty verdicts on all three counts. The district court sentenced Orr and imposed an indeterminate sentence of ten years for intimidation, five years for going armed, and ninety days with credit for time served for ineligible carrying. The court ran all the sentences concurrently. Orr appeals.

## II. Analysis.

### A. Whether sufficient evidence supports the jury's verdicts.

We review "challenge[s] to the sufficiency of the evidence for the correction of errors at law, viewing the evidence in the light most favorable to the State." *State v. Brown*, 996 N.W.2d 691, 695–96 (Iowa 2023). In doing so, we are bound by the

jury's verdict if it is supported by "evidence sufficient to convince a rational trier of fact the defendant is guilty beyond a reasonable doubt." *State v. Mong*, 988 N.W.2d 305, 312 (Iowa 2023) (quoting *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021)).

Orr's argument commences, "In this case, the two state witnesses simply were not credible," referring to Tatum and Waskow. He argues that the surveillance video is the best evidence and shows at no time did the shooter remove the mask. He surmises "[i]t is likely the state forced this identification" and "[i]t is highly improbable that Tatum could have identified Orr based on the limited, brief interaction and the mask that covered Orr's facial features." He also complains, "Waskow's testimony is also suspect. She was dating Amaechi in April 2022, but they had subsequently broken up." He also argues, "There was no credible evidence to support that she was actually at the Logan Convenience Store on April 20, 2022." This last contention ignores Orr's own admissions to the detective that he traveled to the convenience store with Waskow in her vehicle along with Amaechi.

We do not look at Tatum or Waskow's testimony in isolation but consider all the evidence together. Ultimately it is the jury's function "to weigh the evidence and 'place credibility where it belongs.'" *State v. Shanahan*, 712 N.W.2d 121, 135 (Iowa 2006) (citation omitted). The question is whether the evidence supports the finding the jury made, not whether it would support a different finding. *State v. Lacey*, 968 N.W.2d 792, 800–01 (Iowa 2021). This jury found Tatum and Waskow credible. And in addition to Tatum and Waskow's testimony and the store video, there was other corroborative evidence. During the search of the residence where

Orr was staying, police discovered the "Backwoods" sweatshirt and the red and black Nike sneakers. Orr now argues, "There was nothing to tie Orr specifically to the items versus anyone else who would have had access in the home." But this again ignores that Orr admitted in his police interview that these items belonged to his girlfriend and him, respectively. Also, the magazines and bullets found at the house were consistent with the type of firearm and bullets used in the convenience store. In the recorded police interview Orr made several admissions including that he was at the convenience store in Waskow's car, but that he did not go into the store. He claimed an unnamed relative—"a brother" or someone who was "like a brother"—went into the store and was the shooter. Orr refused to name this person and only referred to the person as "TJ", but when the detective checked this out on Facebook, TJ's page contained photos of Orr. The jury was free to disregard Orr's explanations to police.

Upon our review, we find the evidence presented to the jury, taken in the light most favorable to the verdict, constitutes substantial evidence. A rational jury, based upon this evidence, could conclude beyond a reasonable doubt that Orr was the shooter.

### B. Whether the jury instruction on going armed with intent misstated the law.

Orr next contends the district court misstated the law when it submitted the going armed with intent jury instruction without a necessary element of the offense, movement. Preliminarily, the State contests error preservation on this issue. The State points out that Orr's counsel did not object to the trial court's marshaling instruction setting forth the elements of going armed with intent. Orr concedes in

his appeal brief that his trial counsel did not object to this instruction that he now challenges.

A timely objection to jury instructions in criminal proceedings is necessary to preserve alleged error for appellate review. *State v. Ondayog*, 722 N.W.2d 778, 785 (Iowa 2006). Because Orr did not object, he did not preserve the error for our review.

But Orr goes on to argue that we should bypass error preservation or adopt plain error, which the supreme court has rejected. *See State v. Treptow*, 960 N.W.2d 98, 109 (Iowa 2021). As Orr failed to preserve error on his claim concerning the jury instruction, we do not address it.

### C. Whether the sentences for going armed with intent and intimidation with a dangerous weapon must be merged.

Finally, Orr contends the erroneous jury instruction results in the offense of going armed merging with the intimidation with a dangerous weapon. Thus, he argues the separate sentences are illegal and must be vacated. We review claims of an illegal sentence involving merger for the correction of errors at law. *Brown*, 996 N.W.2d at 696. Unlike jury instructions, illegal sentences may be raised at any time. *See Anderson v. Iowa Dist. Ct.*, 989 N.W.2d 179, 181 (Iowa 2023). And erroneous jury instructions become the law of the case, whether they are right or wrong.[1] *See Brown*, 996 N.W.2d at 696.

Orr argues that because the court left out the element of movement in the going armed with intent marshaling instruction, Iowa Code section 701.9 requires

---

[1] Neither party questions whether "law of the case" doctrine applies in a sentencing challenge.

merger in the sentencing with intimidation with a dangerous weapon. He contends that omitting the movement element results in all elements contained in going armed with intent being included in the intimidation with a dangerous weapon offense, making it a lesser included offense. Thus, Orr urges it was not possible to commit the crime of going armed with intent and not commit intimidation with a dangerous weapon. And the district court's failure to merge a conviction as required by Iowa law would result in an illegal and void sentence. *See* Iowa Code § 701.9; *State v. Love*, 858 N.W.2d 721, 723 (Iowa 2015).

Our supreme court recently summarized the law applicable to evaluating a merged offense argument.

> Under Iowa Code section 701.9, "[n]o person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted." This statute codifies the double jeopardy protection against multiple punishments for the same offense.
> "The legislature defines the offenses and can provide for multiple punishments for separate offenses that apply to the same conduct." If the legislature intended for there to be multiple punishments, then the Double Jeopardy Clause is not violated, section 701.9 is not applicable, and merger is not required. "[I]n deciding whether a punishment is constitutionally permissible under the Double Jeopardy Clause, we look to what punishment the legislature intended to impose."

*Brown*, 996 N.W.2d at 697 (alterations in original) (internal citations omitted).

The merger analysis is a two-step process. *See State v. Bloom*, 983 N.W.2d 44, 51 (Iowa 2022). First, the reviewing court must "decide whether the crimes meet the legal elements test for lesser included offenses." *State v. Halliburton*, 539 N.W.2d 339, 344 (Iowa 1995). "To apply the legal elements test for lesser included offenses, we compare the elements of the two offenses to determine whether it is possible to commit the greater offense without also

committing the lesser offense." *Id.* Then we must "consider whether the legislature intended multiple punishments for both crimes." *Id.* If the legislature did intend multiple punishments, merger is unnecessary. *Id.*

The marshaling instruction for intimidation with a dangerous weapon required the State to prove:

> 1. On or about the 29th day of April, 2022, the defendant discharged a dangerous weapon, to wit, a loaded firearm in or into the Logan Avenue convenience store which was occupied by Derrick Tatum.
> 2. The firearm was a dangerous weapon as explained in Instruction No. 20.
> 3. Derrick Tatum actually experienced fear and serious injury and his fear was reasonable under the circumstances.
> 4. The defendant shot the firearm with the specific intent, as explained in Instruction No. 15, to injure or cause fear or anger in Derrick Tatum.

The instruction for going armed with intent required:

> 1. On or about the 20th day of April, 2022, the defendant was armed with a dangerous weapon—a loaded firearm.
> 2. The defendant was armed with the specific intent, as explained in Instruction No. 15, to use the weapon against another person.

Based on these two instructions, Orr argues:

> In looking at element one, discharging a dangerous weapon would necessitate possessing a loaded firearm. Shooting the weapon with the specific intent to injure or cause fear in Derrick Tatum would again necessitate using the firearm against Derrick Tatum. As written, it is impossible to commit the one and not the other. The two sentences must merge.

The State responds that these marshaling instructions fail the legal elements test. For there to be intimidation, Orr had to have "displayed a firearm in a threatening manner while committing that crime," which according to another instruction "means to show or make the existence of a firearm apparent in a

manner which intimidates the victim at the time of the crime." For going armed with intent, when a firearm is involved the "intent to use" element "requires proof of an intent to shoot another person." *State v. Slayton*, 417 N.W.2d 432, 434 (Iowa 1987). The fact that Orr possessed a firearm does not satisfy the different intent requirements of each offense. *Cf. State v. Taylor*, 596 N.W.2d 55, 57 (Iowa 1999) (finding offense of terrorism, later renamed intimidation with a dangerous weapon, does not merge with going armed with intent, both because of the movement element and independently because "[g]oing armed with intent includes . . . intent to use a weapon without justification against another").

Thus, we find that even with the marshaling instruction for going armed with intent missing the movement element, the crimes of going armed with intent and intimidation with a dangerous weapon do not meet the elements test for lesser included offenses. So the district court did not need to merge the offenses for sentencing.

### III. CONCLUSION.

We conclude that sufficient evidence supports the jury verdicts; error was not preserved to challenge the jury instruction and thus cannot be considered; and it is possible to commit intimidation with a dangerous weapon without also committing going armed with intent, so merger does not apply. We affirm the convictions and sentences.

**AFFIRMED.**